NO. 95-567

IN THE SUPREME COURT OF THE.STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

WALTER CASSELL,

    Defendant and Appellant,

FILED

DEC 30 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          William F. Hooks, Appellate Defender, Helena,
Montana

       For Respondent:

          Joseph P. Mazurek, Attorney General, Patricia J.
Jordan, Assistant Attorney General, Helena, Montana;
Dennis Paxinos Yellowstone County Attorney,
Billings, Montana

Submitted on Briefs: July 25, 1996

Decided: December 30, 1

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Following a plea of guilty in the District Court of the Thirteenth Judicial District, Yellowstone County, defendant Walter Cassell was convicted of deliberate homicide. Cassell appeals the District Court's denial of his motion to suppress his confession. We affirm.

We address the following issue on appeal:

Did the District Court err in denying Cassell's motion to suppress his confession?

## Factual and Procedural Background

On the morning of November 19, 1994, the Laurel Police Department and the Yellowstone County Sheriff's Department were notified that a body had been found in a dumpster behind the 500 block of Birch Avenue in Laurel. The investigation revealed that the victim, John Formo, had been drinking with Cassell and several other individuals the previous night at a house located at 506 Birch Avenue when an argument and fight ensued. Formo was stabbed 16 times and severely beaten. His body was then dragged from the house and placed in the dumpster.

The police detained Cassell for questioning along with the other individuals who were inside the house. Cassell was transported to the Laurel Police Department where he was subjected to three custodial interrogations. Cassell incriminated himself in the second and third interrogations.

On November 25, 1994, Cassell was charged by information with the offense of deliberate homicide, a felony. He entered a plea of

not guilty and counsel was appointed to represent him. On July 20, 1995, defense counsel filed a motion to suppress the statements made by Cassell during the interrogations on the grounds that Cassell's right against self-incrimination under the Fifth Amendment of the United States Constitution and Article II, Section 25 of the Montana Constitution had been violated. A hearing on Cassell's motion was held on August 25, 1995. Four days later, the District Court entered written findings of fact and conclusions of law denying Cassell's motion.

On August 30, 1995, Cassell executed an Acknowledgment of Waiver of Rights and entered a plea of guilty to the offense as charged. Cassell specifically reserved his right to appeal the denial of his motion to suppress his confession and to withdraw his guilty plea if he prevails in the appellate courts. On November 2, 1995, the District Court sentenced Cassell to 100 years in Montana State Prison on the offense of deliberate homicide with an additional 10 years for the use of a weapon. The sentences are to run consecutively.

## Discussion

Did the District Court err in denying Cassell's motion to suppress his confession?

In his motion to suppress, Cassell asserted that he was not advised of his rights as mandated by Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Cassell also contended that he did not waive his constitutional right against self-incrimination, that he was intoxicated at the time he made the

3

statements and that he was intimidated into making the statements. After hearing testimony from the law enforcement officers who conducted the interrogations as well as Cassell, the District Court determined that Cassell was advised of his Miranda rights prior to his statements and that his constitutional rights were not violated in that respect. Moreover, the court determined that Cassell's statements were voluntary and were not coerced or taken at a time when he was impaired by intoxication to such a degree that would have precluded him from understanding his rights.

The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citing State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 92). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court has a definite and firm conviction that the district court made a mistake. State v. Loh (1996), 275 Mont. 460, 475, 914 P.2d 592, 601 (citing State v. Hermes (1995), 273 Mont. 446, 449, 904 P.2d 587, 589).

The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself. ." Similarly, Article II, Section 25 of the Montana Constitution provides that " [n]o person shall be compelled to testify against himself in a criminal

4

proceeding." In <u>Miranda,</u> the United States Supreme Court stated that the privilege against self-incrimination is fulfilled "only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" <u>Miranda,</u> 384 U.S. at 460, 86 S.Ct. at 1620, 16 L.Ed.2d at 715 (citing Malloy v. Hogan (1964), 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659).

An individual may waive his Fifth Amendment rights only if the waiver has been made voluntarily, knowingly and intelligently. <u>Miranda,</u> 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. See also State v. Allies (1979), 186 Mont. 99, 109, 606 P.2d 1043, 1049. The voluntariness of a confession is largely a factual question to be determined by taking into account the totality of the circumstances under which the confession was made. <u>Loh</u>, 914 P.2d at 601 (citing State v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208). The totality of the circumstances includes several factors: the defendant's age and level of education; the interrogation technique used by the police; whether the defendant was advised of his or her <u>Miranda</u> rights; the defendant's prior experience with the criminal justice system and police interrogation; the defendant's background and experience; and the defendant's demeanor, coherence, articulateness, and capacity to make full use of his or her faculties. <u>Loh</u>, 914 P.2d at 601-02. We also stated in <u>Loh</u> that

> a confession or admission extracted by any sort of threat
> or violence, by the exertion of any improper influence,
> or by any direct or implied promises, however slight, has
> the potential for being involuntary.

<u>Loh</u>, 914 P.2d at 602 (citing State v. Phelps (1985), 215 Mont. 217, 224, 696 P.2d 447, 451).

Section 46-13-301(1), MCA, authorizes **a motion** to suppress any confession or admission given by a defendant on the basis that the statement was involuntary. Furthermore, at a hearing concerning the merits of a motion to suppress, the State has the burden of proving, by a preponderance of the evidence, that the confession or admission was voluntary. Section 46-13-301(2), MCA.

The State concedes that Cassell was in custody at the time of the interrogations and that the officers had a duty to inform Cassell of his <u>Miranda</u> rights. Cassell was first interrogated at 12:40 pm on November 19, 1994, only one or two hours after he had been taken into custody. Detective George Jensen and Undersheriff Jay Bell conducted the interrogation. At the hearing on his motion to suppress, Cassell testified that he was not advised of his <u>Miranda</u> rights during this interview. However, both Jensen and Bell testified that Jensen informed Cassell of his <u>Miranda</u> rights by reading the advisement of rights from a card Jensen had in his possession. The officers also testified that they informed Cassell that they were conducting a criminal investigation. They obtained the correct spelling and pronunciation of Cassell's name and asked him if he had any questions about his rights and whether he would like to have an attorney present.

Jensen and Bell testified that Cassell indicated he understood his rights and was willing to talk. Jensen testified that he obtained Cassell's permission to tape-record the remainder of the

6

interview. Jensen did not have Cassell acknowledge on tape that he had been informed of his rights before Jensen conducted the 5-minute question and answer session. At the conclusion of this interview, Cassell was taken out and placed in a holding area. Jensen testified that he did not have Cassell sign a written waiver of rights as it was not common practice in Yellowstone County to do so.

Cassell was brought back into the interrogation room at 2:48 pm that same day. Jensen and Bell were again present. Jensen testified that he asked Cassell if he would like his rights read to him again, but Cassell stated that he understood what his rights were. Jensen informed Cassell that his statement was not consistent with what the other individuals present at the time of the murder had told them. After 5 or 10 minutes of conversation, Cassell gave permission to again be recorded.

Cassell testified that during this second interview, the officers told him that Montana had a death penalty and if Cassell cooperated they would see if they could get him 110 years rather than hanging. Jensen testified that one of the people he interviewed that day, possibly Cassell, had asked him if Montana was a death penalty state and he responded that it was but that application of the death penalty would be determined by others.

After the tape recorder was turned on, Jensen conducted a 3-minute question and answer session with Cassell. However, Jensen did not affirm on the tape that Cassell had been advised of his rights. It was in this second interview that Cassell incriminated

himself.

At noon the following day, Jensen and Officer Rosenberg of the Laurel Police Department interviewed Cassell. Jensen testified that he again advised Cassell of his Miranda rights by reading the warnings from a card prior to the interview. Jensen testified that Cassell objected to having his statement recorded this time but that Cassell did go over his previous statement. Cassell later claimed that he denied the officers' request for another interview, hence there was no third interview.

Cassell contends on appeal that the District Court erred in denying his motion to suppress because the State failed to prove by a preponderance of the evidence: that the officers properly advised him of his Miranda rights; that the officers obtained a knowing, intelligent and voluntary waiver of his constitutional right against self-incrimination; or that he voluntarily gave any statement.

Cassell relies on State v. Grey (1995), 274 Mont. 206, 907 P.2d 951, for the proposition that law enforcement officers must record a defendant's waiver of his rights. Cassell contends that the State's failure of proof is "most evident in its willful refusal to record or otherwise preserve some record of the alleged advisement of the Miranda warnings. . . ."

Grey is factually distinguishable from the instant case. In Grey, the Miranda warnings were inadequately given. Moreover, the law enforcement officers used impermissible tactics, including lying and deception, to obtain Grey's confession. Additionally,

8

there was no clear evidence that Grey waived his rights. Here, while the giving of the warnings and the waiver were not tangibly recorded, the trial court observed the witnesses and found that the warnings were adequately given and waived and that no impermissible tactics were used.

Law enforcement officers should be encouraged to preserve a tangible record of advising defendants of their rights and a defendant's waiver of those rights. To the extent that they do not, that failure will be viewed with distrust. We declined in Grey, however, to require that interviews be tape recorded. How the record is preserved is still up to the law enforcement officers. Grey did not set out a. rule of exclusion, but a guideline for weighing evidence. Here the law enforcement officers established to the court's satisfaction that the Miranda warnings were properly given and that no impermissible tactics were used and that under the totality of the circumstances the confessions were voluntary. That is all that is required. The fact that the warnings and waiver were not preserved tangibly, even if viewed with distrust, does not terminate the inquiry, if the court is satisfied from all the available evidence, that the State's burden of proof was met.

Based on the totality of the circumstances, we conclude that Cassell's statements were made voluntarily and that his waiver of his Fifth Amendment rights was made knowingly, intelligently and voluntarily. Cassell was 43 years old at the time of the interrogations and he had a lengthy police record. Thus, he was

familiar with the criminal justice system and police interrogation methods. None of the three interrogations were overly long and no threats were made. Moreover, as the District Court pointed out, the answers given by Cassell to the questions asked of him in the taped interviews were appropriate to the questions, thereby refuting Cassell's argument that he was too intoxicated to understand what was happening.

Accordingly, we hold that the District Court did not err in denying Cassell's motion to suppress his confession.

Affirmed.

_____
                                   Justice

We Concur:

_____
           Chief Justice

_____
              Justices

10

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion for two reasons. First, the interrogation of Walter Cassell was done prior to the issuance of our decision in *State v. Grey* (1995), 274 Mont. 206, 907 P.2d 951. Second, even the *Grey* decision did not require that *Miranda* advice be tape recorded. However, I see no reason why *Miranda* warnings and a suspect's consent to interrogation should not be recorded when the means to so do are readily available, and therefore, write separately to indicate that, in the future, I would require either a written waiver of a defendant's right to remain silent, or a record of the *Miranda* advice that was given to that person and his or her response.

In this case, Cassell was interviewed on three separate occasions. Portions of two interviews were recorded, including his incriminating statements. However, for some reason, when he was advised of his rights pursuant to the Fifth Amendment to the United States Constitution during the first interview, and when he was reminded of those rights during the second interview, the recorder had not been turned on. Therefore, there is no record that Cassell was informed of his rights, and there is no record that he waived those rights.

The investigating officers contend that Cassell was advised of his rights and did waive them, but that that part of the conversation was not recorded because during that time they were establishing rapport with the suspect. Cassell denies that he was

11

given any warning, and denies that he waived his rights. The trial court, and this Court on review, are required to speculate about what actually transpired, based on the relative credibility of the witnesses to the conversation. It is no secret that law enforcement will nearly always win that contest. Therefore, they have no incentive to record that part of the conversation, and it follows, they have little incentive to actually give the required advice.

On the other hand, assuming the advice was given, that it was understood, and that the rights were waived, why not record the conversation and avoid the inevitable challenge to the admission or confession? That simple practice would have saved **time for** the prosecuting attorney, the defense attorney, the trial court, and this Court because it would have established with certainty that Cassell's statement was either voluntary or that it should be suppressed, in compliance with the Constitution, as applied in *Miranda v. Arizona* (1966), 384 U.S. 436.

The majority correctly concludes that when a defendant moves to suppress a confession or admission on the basis that it was involuntary, the State has the burden to prove, by a preponderance of the evidence, that the confession or admission was voluntary. Section 46-13-301(2), MCA. The majority then notes that the voluntariness of a confession is largely a factual question which must be resolved by taking into account the totality of the circumstances surrounding the confession, and lists six factors to be considered. Three of those six factors include: (1) the

interrogation technique used by the police; (2) whether the defendant was advised of his *or* her *Miranda* rights; and (3) the defendant's demeanor and capacity to make full use of his or her faculties. The problem is that, in this case, as in *Grey*, we have no direct knowledge of any of those three factors. The trial court, and this Court, are required to speculate about all three factors by trying to weigh the relative credibility of the people involved in the interrogation. Such an unreliable process is inexcusable when it is unnecessary because a means of absolute verification was readily available.

In *Grey*, we stated that:

> We do hold, that, in the context of a custodial interrogation conducted at the station house or under other similarly controlled circumstances, the failure of the police officer to preserve some tangible record of his or her giving of the *Miranda* warning and the knowing, intelligent waiver by the detainee will be viewed with distrust in the judicial assessment of voluntariness under the totality of circumstances surrounding the confession or admission. That is all the more so where the evidence demonstrates that, as here, the police officer made a conscious decision not to secure a written waiver or otherwise preserve his giving of the *Miranda* warning and the detainee's waiver on the premise that to do so would alert the accused to exercise his rights and, thus, jeopardize the interrogation.

*Grey*, 274 Mont. at 214, 907 P.2d at 956

The excuse given for not recording Cassell's waiver of his Fifth Amendment rights is equally inadequate. In this case, his interrogators wanted to establish a rapport with him. However, that apparently having been accomplished, nothing prevented them from obtaining an acknowledgment from Cassell, once the recorder

13

had been turned on, that he had been advised of his rights and had waived them. Certainly, that kind of acknowledgment could not have been any more disturbing to him than being asked during a tape recorded interview whether he committed deliberate homicide.

This is now the second case in which we have dealt with the issue of whether it is necessary to record *Miranda* warnings and Fifth Amendment waivers, where feasible. I would conclude, as the Minnesota Supreme Court did in *State v. Scales* (Minn. 1994), 518 N.W.2d 587, that following two such admonitions, further refusal to record custodial interrogations is unreasonable and should result in suppression of any incriminating statements made during those interrogations. In that case, after issuing two previous warnings, that Court stated that:

> [W]e hold that all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention. If law enforcement officers fail to comply with this recording requirement, any statements the suspect makes in response to the interrogation may be suppressed at trial. The parameters of the exclusionary rule applied to evidence of statements obtained in violation of these requirements must be decided on a case-by-case basis. Following the approach recommended by the drafters of the Model Code of Pre-Arraignment Procedure, suppression will be required of any statements obtained in violation of the recording requirement if the violation is deemed "substantial." This determination is to be made by the trial court after considering all relevant circumstances bearing on substantiality, including those set forth in § 1503(2) and (3) of the Model Code of Pre-Arraignment Procedure. If the court finds a violation not to be substantial, it shall set forth its reason for such finding. The rule and the remedy will apply prospectively from the date of the filing of this opinion.

14

Scales, 518 N.W.2d at 592-93 (footnote omitted).

When the means is available, as it was in this case, there is no practical justification for the State's failure to record a custodial interrogation. By its failure to do so, it jeopardizes the prosecution by risking suppression of incriminating statements which have been legally obtained. Just as importantly, it makes any determination that detainees have been illegally questioned virtually impossible. Neither outcome is acceptable when the means to avoid it is readily available.

Therefore, in the future, I will follow the rule from Scales and vote to suppress all criminal admissions made during custodial interrogations when there is neither a written waiver of the detainee's rights, nor an electronic record of the State's advice and the detainee's response, assuming it is feasible to do one or the other.

For these reasons, I specially concur with the majority opinion.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

_____
Justice