No. 97-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 195

STATE OF MONTANA,

Plaintiff and Respondent,

v.

THOMAS JOHN DOYLE,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lucas J. Foust, Assistant Public Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

Micheal S. Wellenstein, Ass't Attorney General, Helena, Montana

Mike McGrath, Lewis and Clark County Attorney,

Lisa Leckie, Deputy Lewis and Clark County Attorney, Helena, Montana

No

Submitted on Briefs: April 9, 1998

Decided: August 11, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ On March 11, 1996, Thomas John Doyle (Appellant) was charged by information in the First Judicial District Court, Lewis and Clark County, with criminal production of dangerous drugs, a felony, in violation of § 45-9-110, MCA. On June 4, 1996, Appellant filed a motion to suppress evidence obtained in a search of his residence. On March 6, 1997, the District Court issued its Findings of Fact, Conclusions of Law, and Order denying Appellant's motion to suppress, after which Appellant entered a plea of guilty on the condition that he be allowed to appeal the court's adverse ruling. This appeal followed. We affirm the order of the District Court.

¶ The sole issue on appeal is whether the District Court erred in denying Appellant's

motion to suppress evidence found in plain view by a police officer during a search of his residence.

## BACKGROUND

¶ On February 27, 1996, at approximately 6:30 a.m., the Helena Police Department received an anonymous call made by a woman who reported being in Appellant's residence and seeing blood in his refrigerator and bloody clothes on the floor. Officers Peter Rehman (Officer Rehman) and Richard Drysdale (Officer Drysdale) were dispatched to investigate the complaint and arrived at Appellant's residence at about 7:00 a.m. Officer Rehman knocked on Appellant's outside storm porch entry door, but no one answered. Officer Drysdale looked through a window next to the door and saw Appellant sleeping on the couch. After repeatedly knocking on the exterior door, Officer Rehman noticed an interior door through the storm porch leading to Appellant's residence. Officer Rehman entered the storm porch, knocked on the interior door, and Appellant answered the door.

¶ Officers Rehman and Drysdale testified that when Appellant opened the door, they identified themselves and informed Appellant of the complaint they had received about blood in his refrigerator and bloody clothes on his floor. Both officers were standing side by side in the doorway during this conversation. Officer Drysdale testified there was nothing obstructing Appellant's view of him in the doorway and that he was easily visible. Officer Rehman asked Appellant whether he and Officer Drysdale could step inside, inspect the refrigerator, and check the house for other people. Appellant allowed the officers to enter his home.

¶ Appellant's house was very small and the entry door immediately led into a joint living room and efficiency kitchen. The only other rooms in the house included a bedroom and a bathroom. Officer Rehman explained that the cursory check of the rooms was for safety reasons, to make sure a weapon was not drawn on them. Officer Rehman checked the rooms and ascertained that there were no other people in the house with Appellant. This took less than a minute. Officer Rehman then opened the refrigerator and saw what appeared to be blood from a large piece of meat. He did not see bloody clothes. Officer Rehman testified that although the blood in the refrigerator was messy, there was no cause for concern.

¶ Officers Rehman and Drysdale testified that while Officer Rehman was checking

the rooms, Officer Drysdale and Appellant remained standing next to each other in the joint living room and kitchen area. Later, Appellant moved to follow Officer Rehman to the refrigerator. As Officer Drysdale was standing in the living room, he observed, approximately four to five feet away from him, a tray on the coffee table containing the following items: two pipes, two small knives, a pill container, a film container, and a green leafy substance. Officer Drysdale, who has 22 years of law enforcement experience, testified that it was obvious to him that the items he saw on the coffee table were drug paraphernalia.

¶ Officer Drysdale looked around the room and next observed a grouping of plants, some of which were marijuana, on a plant stand by the living room window about eight feet away. Officer Drysdale testified that, based on his training and experience, he could identify a marijuana plant. He testified that he believed the plants to be marijuana because of the distinctive finger-like leaves. He stated that although he was reasonably sure the plants were marijuana, he walked a few feet and shined his flashlight on the plants to confirm his suspicions. After identifying the plants as marijuana, Officer Drysdale told Officer Rehman what he had observed and called a Drug Task Force officer, as required whenever an officer discovers drugs. The officers seized the marijuana plants and drug paraphernalia and arrested Appellant for committing several drug-related offenses.

¶ Appellant testified to a different set of facts concerning the timing and circumstances of Officer Drysdale's presence. Appellant testified that when he heard knocking and opened the door, only Officer Rehman was standing in the doorway. Appellant testified that he did not see another officer and that Officer Rehman did not indicate he was with another officer. Appellant testified he was not aware of Officer Drysdale's presence until he saw Officer Drysdale and another young officer enter his house, after Officer Rehman had inspected the refrigerator. Appellant testified that Officer Drysdale and the third officer searched his house and that Officer Drysdale found the marijuana plants. Appellant stated that either Officer Rehman, Officer Drysdale, or the third officer told him they were going to call the Drug Task Force officer.

## DISCUSSION

¶ Did the District Court err in denying Appellant's motion to suppress evidence found in plain view by a police officer during a search of his residence?

No

¶ This Court reviews a district court's denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous. State v. Cassell (1996), 280 Mont. 397, 400, 932 P.2d 478, 479. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the district court made a mistake. Cassell, 280 Mont. at 400, 932 P.2d at 479. We review a district court's conclusions of law *de novo* to ensure that the court's interpretation of the law was correct. State v. Hardy (1996), 278 Mont. 516, 519, 926 P.2d 700, 702.

¶ The Fourth and Fourteenth Amendments to the United States Constitution, and Article II, Section 11 of the Montana Constitution protect against unreasonable searches and seizures. State v. Loh (1996), 275 Mont. 460, 467-68, 914 P.2d 592, 597. Warrantless searches and seizures are *per se* unreasonable subject to only a few carefully drawn exceptions. Loh, 275 Mont. at 468, 914 P.2d at 597. One of these exceptions is the plain view doctrine which allows police officers, under certain circumstances, to seize evidence in plain view without a warrant. Loh, 275 Mont. at 468, 914 P.2d at 597. In Loh, we adopted the United States Supreme Court's three-part criteria enabling a police officer to seize evidence pursuant to the plain view doctrine. First, "the officer must be lawfully at the place from which he could plainly view the evidence. In other words, his initial entry onto or intrusion into the place where he views the evidence must not have been in violation of the Fourth Amendment or in violation of Article II, section 11 of Montana's Constitution." Second, "the item must be in plain view and its incriminating character be 'immediately apparent.' " Third, the officer "must also have a lawful right of access to the object itself." Loh, 275 Mont. at 473, 914 P.2d at 600 (citing Horton v. California (1990), 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112).

¶ In the instant case, Appellant disputes only the first criterion of the plain view doctrine. Appellant argues that Officer Drysdale was not lawfully in Appellant's home when he observed the marijuana plants and drug paraphernalia because Officer Drysdale was beyond the scope of Appellant's consent. Appellant argues that when a person consents to a search of his home, the consent is limited to only those officers of which the person is aware. Appellant argues that his consent to allow Officer Rehman to enter his home extended only to Officer Rehman because he did not see Officer Drysdale and was otherwise unaware of Officer Drysdale's presence.

¶ The State maintains that Appellant's argument should be rejected based on both the facts and the law. First, the State argues that Appellant's position is wholly dependent on his version of the facts which the District Court, as the finder of fact, was entitled to reject. State v. Brogan (1993), 261 Mont. 79, 87, 862 P.2d 19, 24. Second, the State cites several federal circuit court cases holding that consent to search cannot be qualified to a certain number of officers. United States v. Rubio (9th Cir. 1983), 727 F.2d 786, 796-97 (stating that once valid consent has been given, any expectation of privacy has been lost and the entry of additional officers does not further diminish the consenter's expectation of privacy); *accord* United States v. Betts (7th Cir. 1994), 16 F.3d 748, 755; Wildauer v. Frederick County (4th Cir. 1993), 993 F.2d 369, 372.

¶ We hold that substantial evidence exists to support the District Court's finding that Appellant voluntarily consented to Officer Drysdale entering and searching his house. Because our holding is based entirely on the facts of this case, we need not reach the legal issue of whether consent can be qualified to a certain number of officers.

¶ As previously stated, in order to meet the third criterion of the plain view doctrine, the State was required to prove that Officer Drysdale was lawfully in Appellant's home when he viewed Appellant's contraband. Loh, 275 Mont. at 473, 914 P.2d at 600. It is undisputed that Officer Drysdale did not have a warrant to enter Appellant's home. Thus, only if Officer Drysdale entered Appellant's home pursuant to one of the recognized exceptions to the warrant requirement was he lawfully in Appellant's home. Loh, 275 Mont. at 473, 914 P.2d at 600.

¶ One recognized exception to the warrant requirement is that a search is legal if it is conducted pursuant to consent that is voluntarily given. State v. Rushton (1994), 264 Mont. 248, 257, 870 P.2d 1355, 1361. The State has the burden of showing a defendant voluntarily consented to an officer entering his house. Rushton, 264 Mont. at 257, 870 P.2d at 1361. This Court has adopted the "totality of circumstances" test used by the United States Supreme Court to determine whether consent is voluntary. Rushton, 264 Mont. at 258, 870 P.2d 1361.

¶ The totality of circumstances indicate that Appellant voluntarily consented to Officer Drysdale entering his house. The record contradicts Appellant's claim that he was unaware of Officer Drysdale's presence and that he did not knowingly consent to

Officer Drysdale's entry. Officers Rehman and Drysdale testified that they both were standing in the doorway when Appellant answered the door. Officer Drysdale testified that there was nothing obstructing Appellant's view of him in the doorway and that he was clearly visible. Officers Rehman and Drysdale testified that Appellant let both of them in the house. Both officers

testified that while Officer Rehman was checking the rooms, Appellant was with Officer Drysdale in the joint living room and kitchen area.

¶ The weight of evidence and the credibility of witnesses are exclusively within the province of the trier of fact. State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. If the evidence conflicts, the trier of fact determines which shall prevail. Ahmed, 278 Mont. at 212, 924 P.2d at 686. The District Court heard all the evidence presented and chose to believe the State's version of the events. We will not disturb the District Court's factual and credibility determinations on appeal. Ahmed, 278 Mont. at 212, 924 P.2d at 686.

¶ We hold that the District Court's finding that Appellant consented to Officer Drysdale entering his house was supported by substantial evidence and, therefore, was not clearly erroneous. We hold that because Officer Drysdale was lawfully in the house when he observed the marijuana plants and drug paraphernalia, the District Court properly denied Appellant's motion to suppress.

¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

No

/S/ JIM REGNIER

/S/ KARLA M. GRAY