No. 97-696

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 277

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CHESTER JARMAN,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark English, Deputy Public Defender, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Patricia J. Jordan, Assistant Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Melanie Logan, Deputy Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: May 14, 1998

Decided: November 12, 1998

Filed:

_____

Clerk

## Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. Chester Jarman pled guilty to felony possession of dangerous drugs, misdemeanor possession of drug paraphernalia, and felony possession of a concealed weapon in the Thirteenth Judicial District Court, Yellowstone County. He appeals on an issue he reserved before entering his guilty plea. We reverse.

¶2. The issue is whether the District Court erred in determining that the officer who arrested Jarman had the requisite particularized suspicion to stop his vehicle.

¶3. On December 23, 1996, at approximately 3:30 a.m., Officer Brian Korell of the Billings, Montana, Police Department responded to a domestic disturbance call. The female who had reported the domestic disturbance as a fight between herself and her boyfriend told Officer Korell and another officer who arrived at her home in response to the call that her boyfriend may be on his way to the Colonial Apartments, about three blocks away.

¶4. Officer Korell drove toward the Colonial Apartments. While doing so, he observed an individual later identified as Chester Jarman standing beside a car at an outside pay telephone. No one else was around and Officer Korell observed no other traffic. Officer Korell drove around the block and back to the pay telephone. By that time, Jarman and his automobile were no longer there. The phone receiver was off the hook.

¶5. Continuing to patrol the area, Officer Korell observed Jarman's car leaving the parking lot of an apartment complex. Officer Korell initiated a traffic stop during which he discovered a knife in plain view on the front seat of the car. Then, on Jarman's person, he found illegal drugs and a gun. Officer Korell also learned that outstanding warrants existed against Jarman.

¶6. Jarman moved to suppress all of the evidence found on his person and in his car on grounds that the stop was not supported by a reasonable articulable suspicion that he had engaged in criminal activity. After briefing and a hearing, the court denied the motion to suppress. Jarman subsequently pled guilty to the charges against him, reserving the right to appeal the denial of his motion to suppress.

## DISCUSSION

¶7. Did the District Court err in determining that the officer who arrested Jarman

**had the requisite particularized suspicion to stop his vehicle?**

**¶8. This Court's standard of review of a denial of a motion to suppress is whether the district court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law.** *State v. Roberts* **(1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250. A finding is clearly erroneous if it is not supported by substantial evidence, the court has clearly misapprehended the effect of the evidence, or this Court is left with a definite and firm conviction that the district court made a mistake.** *State v. Doyle***, 1998 MT 195, ¶ 10,\_\_\_Mont. \_\_\_, ¶ 10, \_\_\_ P.2d \_\_\_, ¶ 10.**

**¶9. The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons against unreasonable searches and seizures of their persons, including brief investigatory stops such as stops of vehicles.** *See United States v. Cortez* **(1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628. An investigatory stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity.** *Brown v. Texas* **(1979), 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362. To stop a person, an officer must have a particularized and objective basis for suspecting the particular person of criminal activity.** *Brown***, 443 U.S. at 51, 99 S.Ct. at 2640-41, 61 L.Ed.2d at 362.**

**¶10. Montana has codified the standard for an investigatory stop of a person or vehicle at § 46-5-401, MCA:**

In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

This Court has held that in order to show sufficient cause to stop a vehicle, the burden is on the State to show: (1) objective data from which an experienced police officer can make certain inferences; and (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing or was witness to criminal activity. *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296.

**¶11. In this case, the District Court stated in its findings that Officer Korell suspected**

that Jarman might have been the individual involved in the domestic disturbance to which he had responded. This finding is supported by substantial evidence in the form of Officer Korell's testimony. However, Officer Korell's testimony in this regard was not based upon reasonable inferences from objective data. Although, as the State points out, experienced law enforcement officers are allowed to draw conclusions which laymen could not properly draw, *Gopher*, 193 Mont. at 193, 631 P.2d at 295, nothing in this record connected Jarman to the domestic disturbance other than the fact that he was the only male Officer Korell observed in the area. Moreover, Officer Korell admitted that he did not mention in his police report that he stopped Jarman's car because he was a suspect in the disturbance; he voiced this rationale for the first time at the suppression hearing.

¶12. The District Court also found that "Officer Korell thought defendant was trying to elude him." This finding, while also supported by Officer Korell's testimony at the suppression hearing, is not based on reasonable inferences. Officer Korell conceded during his testimony that if Jarman had wanted to avoid him after being spotted at the pay phone, he could have been several miles away from the area by the time Officer Korell saw him driving out of the apartment complex parking lot only a few blocks away. Officer Korell could not have logically concluded that Jarman was attempting to elude him by continuing to drive around in the area in which Officer Korell had just seen him.

¶13. The District Court concluded that the only issue raised by Jarman in his motion to suppress was the legality of the stop. The court then concluded that "Officer Korell had a particularized suspicion that defendant had committed an offense to authorize a stop . . . , considering the totality of the circumstances existent at the time of the stop."

¶14. Being in a high crime area by itself does not give the police a particularized suspicion to stop a person. *Brown*, 443 U.S. at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362-63. In *Brown*, police officers in El Paso, Texas, noticed two men walking in opposite directions away from each other in an alley in an area with a high incidence of drug traffic. The officers stopped one of the men, Brown, who they had not seen in the area before, and asked him to identify himself. Brown refused, and was arrested for and convicted of violating a Texas statute making it a crime to refuse to give one's name and address to a police officer who requested that information after a lawful stop. The United States Supreme Court reversed, declaring that application of the

Texas criminal statute to Brown under these circumstances violated the Fourth Amendment. The Court held that the officers lacked any reasonable suspicion to believe that Brown was engaged in or had engaged in criminal conduct, stating that in the absence of any basis for suspecting Brown of misconduct, the balance between the public interest in preventing crime and Brown's right to personal security and privacy tilted in favor of freedom from police interference. *Brown*, 443 U.S. at 52-53, 99 S.Ct. at 2641, 61 L.Ed.2d at 363.

¶15. In the present case, after discounting the testimony to the effect that Jarman may have been involved in the domestic disturbance and that Jarman was trying to elude Officer Korell, the remaining offered justifications for stopping Jarman are the observation of Jarman talking on a pay phone on a cold night in a high crime area and then, after Officer Korell drove around the block, Jarman's absence and the telephone receiver hanging down off the hook. These facts do not rise to the level of a reasonable and articulable suspicion that Jarman was, had been, or was about to engage in criminal activity. Without any connection to the domestic disturbance or reasonable suspicion of evasion, Officer Korell had no reason to stop Jarman. We hold that the District Court's conclusion that Officer Korell had a particularized suspicion was erroneous.

¶16. Because the stop was therefore illegal, the subsequent search of Jarman's person and his automobile are tainted by the illegal stop. The evidence found as a result of the searches must be suppressed. The District Court's decision on Jarman's motion to suppress is reversed and this matter is remanded to the District Court for further proceedings consistent with this Opinion.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

No

/S/ TERRY N. TRIEWEILER

Justice Jim Regnier dissenting.

**¶17. I dissent from the majority's conclusion that the District Court erred in determining that Officer Korell, when considering the totality of the circumstances, had a particularized suspicion to stop Jarman.**

**¶18. The majority concedes that the District Court's critical findings were supported by substantial evidence: first, there was substantial evidence to support Officer Korell's suspicion that Jarman was the person involved in the domestic disturbance and, second, there was substantial evidence to support Officer Korell's conclusion that the defendant was trying to elude him. The majority then wrongly concludes, in my view, that the officer's testimony was not based upon reasonable inferences from objective data.**

**¶19. At approximately 3:00 on a Monday morning, Officer Korell was responding to a report of a domestic disturbance involving a woman and her boyfriend. When Korell arrived at the woman's home, he was informed that the suspect was heading toward an apartment complex about three blocks away. En route to the apartment complex, Officer Korell saw only one person in the area, a man standing next to a car by a pay telephone. It was twenty degrees below zero and indoor phones were available at nearby convenience stores. There was no other traffic in the area. The man appeared to be about the same age as the reported suspect.**

**¶20. Officer Korell thought it was suspicious that someone would use an outdoor pay phone when it was twenty degrees below zero and there were indoor phones available. Officer Korell then drove around the block and returned, but the phone had been left dangling off the hook and Jarman's vehicle was not in the area. Korell testified that it was obvious to him that the man he observed had left in a hurry. As Korell continued to patrol the area, he observed Jarman's vehicle leaving the parking lot of an apartment complex. Officer Korell then initiated the stop.**

**¶21. The majority essentially takes issue with inferences drawn by Officer Korell when faced with these facts. First, the majority points out that there was nothing in**

the record to connect Jarman to the domestic disturbance other than he was the only male observed in the area. The majority then focuses on Officer Korell's admission at the suppression hearing that if Jarman was trying to elude him after being spotted at the pay phone, he could have been several miles away from the area where he was ultimately stopped.

¶22. It is apparent from the record, however, that Officer Korell was suspicious of Jarman not just because he was the only male he observed on the streets. Korell was responding to criminal activity that had just occurred; Jarman appeared to be the same age as the reported suspect; and he was the only person in the vicinity where Officer Korell had just been told the suspect could be found. Yet, Officer Korell did not stop Jarman when he first saw him. He drove around the block and when he returned Jarman and his car were gone and the phone was dangling off the hook. This convinced Korell that Jarman was trying to elude him. At that point, Korell had a particularized suspicion to stop the defendant. The fact that Jarman traveled only a short distance from the pay phone to the apartment complex instead of further away to elude Officer Korell is immaterial. Korell already had a particularized suspicion to stop Jarman before he found him in the parking lot.

¶23. In summary, I believe the investigatory stop complied with the standards set forth in § 46-5-401, MCA and our guidelines in *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296. The District Court properly denied Jarman's motion to suppress.

/S/ JIM REGNIER

Chief Justice J. A. Turnage and Justice James C. Nelson join in the foregoing dissenting opinion.

/S/ J. A. TURNAGE

No

/S/ JAMES C. NELSON