No. 00-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 248

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LAURENCE JOE BAUER, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

Honorable John Warner, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Jeremy S. Yellin, Attorney at Law, Fort Benton, Montana

For Respondents:

Honorable Mike McGrath, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

David G. Rice, County Attorney, Havre, Montana

Submitted on Briefs: May 4, 2001
Decided: December 6, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Laurence Joe Bauer (Bauer) was charged with Criminal Possession of Dangerous Drugs in the Twelfth Judicial District Court, Hill County. Bauer filed a motion to suppress all evidence derived from his stop, arrest and search. The motion was denied, and Bauer entered a guilty plea, reserving his right to appeal from the denial of the motion. We reverse.

¶2 We restate the issues as:

¶3 1. Whether the District Court properly denied Bauer's motion to suppress and dismiss for lack of a particularized suspicion justifying the investigative stop.

¶4 2. Whether the District Court correctly concluded that Bauer could be arrested and detained for the offense of unlawful possession of alcohol without violating the constitutional right to privacy, the prohibition against unreasonable searches and seizures, and the prohibition against cruel and unusual punishment.

¶5 3. Whether the District Court properly denied Bauer's motion to suppress and dismiss on the grounds of selective enforcement of the law.

¶6 Because we reverse on Issue 2, we do not reach Issue 3.

Facts and Procedural History

¶7 On November 18, 1999, at approximately 2:47 a.m., the Havre Police Department received a complaint that "two people were messing around with cars" and were running toward the Post Office. The caller did not provide the dispatcher with a description.

¶8 Havre Police Sergeant Ostwalt responded to the complaint. He began searching the area east of the Post Office and noticed a person walking down the street. This person was later

identified as Bauer. When Bauer saw the patrol car, he started to run. Ostwalt requested assistance from Officer Rory Romberg and Patrolman Earl Campbell. Romberg eventually found Bauer hiding in a housing area. Bauer complied with Romberg's request to come out and place his hands on the back of a parked vehicle. When Ostwalt arrived, he immediately placed handcuffs on Bauer and patted him down. Ostwalt observed that Bauer's eyes were red and glassy looking and that he smelled of an alcoholic substance. Ostwalt asked Bauer why he was running. Bauer said that he initially thought the patrol car was his girlfriend's vehicle, and they had just had an argument. When he realized that the vehicle was a police car, he decided to hide. After confirming Bauer's age and record, Ostwalt arrested him for minor in possession (MIP), second offense.

¶9 Bauer was transported to the Hill County Detention Center and was searched as part of the standard booking procedure. During the search, a plastic baggie containing cocaine was found in his pants pocket. Bauer was then charged with Criminal Possession of Dangerous Drugs in violation of § 45-9-102, MCA.

¶10 Bauer moved to suppress the cocaine and dismiss the charge, arguing that his arrest was an unlawful seizure in violation of the Montana Constitution and the Fourteenth Amendment of the United States Constitution. Additionally, he argued that Ostwalt did not have a particularized suspicion to stop him and that statements he made after the stop should be suppressed because he was not given Miranda warnings. After briefing and a hearing, the court denied the motion to suppress. Bauer subsequently pled guilty to the charge against him, reserving the right to appeal the denial of his motion to suppress.

## Discussion

¶11 Did the District Court properly deny Bauer's motion to suppress and dismiss for lack of a particularized suspicion justifying the investigative stop?

¶12 This Court's standard of review of a denial of a motion to suppress is whether the district court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Jarman*, 1998 MT 277, ¶ 8, 291 Mont. 391, ¶ 8, 967 P.2d 1099, ¶ 8. A finding is clearly erroneous if it is not supported by substantial evidence, the court has clearly misapprehended the effect of the evidence, or this Court is left with a definite and firm conviction that the district court made a mistake. *Jarman*, ¶ 8.

¶13 The Fourth Amendment to the United States Constitution and Article II, Section 11 of

the Montana Constitution protect persons against unreasonable searches and seizures of their persons, including brief investigatory stops. *Jarman*, ¶ 9. Montana requires that a peace officer have "a particularized suspicion that the person . . . has committed, is committing, or is about to commit an offense" before stopping that person. Section 46-5-401, MCA.

¶14 In order to prove sufficient cause for a stop, the State has the burden to show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the person stopped is or has been engaged in wrongdoing. *State v. Dawson*, 1999 MT 171, ¶ 17, 295 Mont. 212, ¶ 17, 983 P.2d 916, ¶ 17. *See also State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296.

¶15 In this case, the District Court found that "it was early in the morning and there were few people walking on the streets. Defendant was within close proximity of the location of the complaint. There was no physical description of the two individuals available in the complaint. Ostwalt's patrol vehicle was clearly marked with reflective striping and top lights, and the vehicle could be plainly seen under the street lights. Defendant ran and attempted to hide when he saw the patrol vehicle." Based on these facts, the court held that Ostwalt had a particularized suspicion to stop and question Bauer.

¶16 These findings are supported by substantial evidence in the form of Ostwalt's testimony at the suppression hearing. We hold that the District Court properly concluded that Ostwalt had a particularized suspicion justifying his stop of Bauer.

¶17 Did the District Court correctly conclude that Bauer could be arrested and detained for the offense of unlawful possession of alcohol without violating the constitutional right to privacy, the prohibition against unreasonable searches and seizures, and the prohibition against cruel and unusual punishment?

¶18 Bauer argues that the District Court incorrectly denied his motion to suppress because his arrest and subsequent detention for a non-jailable offense were unlawful in that they violated his right to privacy, his right to be free from unreasonable searches and seizures and his right to be free from cruel and unusual punishment.

¶19 The District Court concluded that Bauer's arrest was lawful because once an officer had probable cause to arrest under § 46-6-311(1), MCA, the right to detain was inherent.

¶20 The Fourth Amendment protects individuals against unreasonable searches and seizures. *Hulse v. State*, 1998 MT 108, ¶ 12, 289 Mont. 1, ¶ 12, 961 P.2d 75, ¶12. The United States Supreme Court recently held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation. *Atwater v. City of Lago Vista* (2001), 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549. In that case, an officer in Texas stopped Atwater while she was driving with her two children. None of them were wearing seatbelts. After Atwater's friend came and took her children, the officer handcuffed Atwater and drove her to the police station. There, the booking officers had her remove her shoes, jewelry and glasses and empty her pockets. They took her mug shot and left her alone in a cell for one hour before taking her before the magistrate. The magistrate released her on a $310 bond. *Atwater*, 532 U.S. at ___, 121 S.Ct. at 1541-42, 149 L.Ed.2d at 558-59.

¶21 The seatbelt law in Texas is a misdemeanor punishable by a fine of between 25 and 50 dollars. Atwater sued the City under 42 U.S.C. § 1983, claiming that the actions had violated her Fourth Amendment right to be free from unreasonable seizure. A divided Supreme Court held that, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater*, 532 U.S. at ___, 21 S.Ct. at 1557, 149 L.Ed.2d at 577.

¶22 The Texas statute that gave the officer authority to arrest states, "Any peace officer may arrest without warrant a person found committing a violation of this subtitle [Rules of the Road]." Tex. Transp. Code Ann. § 543.001. This statute differs considerably from the relevant Montana statute; therefore, we proceed to an analysis under Montana law.

¶23 Article II, Section 10, of the Montana Constitution guarantees an individual's right of privacy. Article II, Section 11, of the Montana Constitution protects the citizens of this State from unreasonable searches and seizures. When a law enforcement officer seizes a person, constitutional protections attach. *State v. Carlson*, 2000 MT 320, ¶ 18, 302 Mont. 508, ¶ 18, 15 P.3d 893, ¶ 18. To determine reasonableness in cases involving searches conducted within an investigatory stop, we have held that the State's interest must be balanced against the level of intrusion into an individual's privacy resulting from the search. *Hulse*, ¶ 36. We conclude that this analysis applies equally to the seizure of a person.

¶24 Section 46-6-310(1), MCA, provides that "whenever a peace officer is authorized to

arrest a person without a warrant, the officer may instead issue the person a notice to appear." Section 46-6-311(1), MCA, states that "a peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest."

¶25 We have held that an officer's authorization to arrest under § 46-6-311(1), MCA, is permissive. *Nelson v. Driscoll*, 1999 MT 193, ¶ 29, 295 Mont. 363, ¶ 29, 983 P.2d 972, ¶ 29. Although the statutory scheme gives officers discretion to either arrest or issue a notice to appear, § 46-6-311(1), MCA, specifically states that there must also be "existing circumstances requir[ing] immediate arrest." We conclude that to be constitutionally valid, an officer's exercise of discretion must be reasonable. As such, the district court must find that, in addition to probable cause, there were circumstances requiring immediate arrest. We hold that in this case, there were no circumstances which required Bauer's immediate arrest.

¶26 In justifying his decision to arrest Bauer and transport him to the detention center, Ostwalt testified that, "I put him in jail for MIP, but also it would prevent another incident between him and his girlfriend for the evening where somebody could have gotten hurt. If he's already upset and running from his girlfriend, I sure wasn't going to put them back in the same habitat having that happen again."

¶27 Bauer argues that his statement to Ostwalt about the argument with his girlfriend should not have been considered at the suppression hearing because he made the statement while in custody, and he had not been given the Miranda warning. The State conceded at the beginning of the suppression hearing that the statements were not relevant to the offense charged and would not be used at trial. The District Court agreed that the statements would not be admissible at trial, but allowed them to be used at the suppression hearing.

¶28 In a suppression hearing, a court must consider the totality of the circumstances. "In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality or degree of reliability, of the information available to the officer." *State v. Gilder,* 1999 MT 207, ¶ 11, 295 Mont. 483, ¶ 11, 985 P.2d 147, ¶ 11.

¶29 At the end of the suppression hearing, the court noted, "I have no evidence that this particular individual constituted a danger to himself or anyone else. He cannot be arrested

under the evidence that I've received for domestic abuse, because there's no evidence, and even upon inquiry by the Court by rather leading question, the officer has no evidence that this person committed any assault or may have been, quotes, in an argument, end quotes. But I have no evidence . . . that he needed jailing, in other words, for his own safety or otherwise that he was that drunk." We conclude that the District Court properly considered the statement as part of the information available to the officer at the time of the arrest.

¶30 Bauer argues that the District Court's finding that there was no evidence that the officers knew at the time of Bauer's arrest whether it was his first, second or third offense for MIP, was clearly erroneous. We agree. Ostwalt clearly testified that he had confirmed Bauer's age and record at the scene, before bringing Bauer to the detention center. He testified that he arrested Bauer for MIP, second offense. Therefore, at the time of the arrest, Ostwalt knew that imprisonment was not a potential punishment.

¶31 The District Court also found that there was no evidence that Bauer constituted a danger to himself or others and there was no evidence of domestic abuse or that an assault had occurred. These findings are supported by substantial evidence. Both officers involved testified that Bauer was cooperative and compliant after he was stopped. Ostwalt testified that he was acquainted with Bauer and he had never had a problem with him. The only evidence indicating any type of assault or domestic abuse was Bauer's statement that he had an argument with his girlfriend.

¶32 Based on these findings, and the fact that Ostwalt was aware that it was Bauer's second offense for MIP, a non-jailable offense, we hold that the District Court incorrectly concluded that Bauer's arrest was lawful. There were no circumstances which required Bauer's immediate arrest.

¶33 We hold that under Article II, Section 10 and Section 11, of the Montana Constitution, it is unreasonable for a police officer to effect an arrest and detention for a non-jailable offense when there are no circumstances to justify an immediate arrest. In the absence of special circumstances such as a concern for the safety of the offender or the public, a person stopped for a non-jailable offense such as second offense, MIP, or a seatbelt infraction should not be subjected to the indignity of an arrest and police station detention when a simple, non-intrusive notice to appear pursuant to § 46-6-310(1), MCA, will serve the interests of law enforcement.

¶34 Because the arrest was unlawful, the search at the detention center was likewise

unlawful and fruits of that search must be suppressed. We reverse the District Court's denial of the motion to suppress and remand for proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JIM RICE