

DA 13-0536

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 209

CITY OF MISSOULA,

        Plaintiff and Appellee,

   v.

MARTIN MULIPA IOSEFO,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-13-92
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James P. O'Brien, O'Brien Law Office, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Gary Henricks, Missoula City Attorney's Office, Missoula, Montana

Submitted on Briefs: May 28, 2014
Decided: August 5, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Martin Mulipa Iosefo appeals the Fourth Judicial District Court's order affirming the Missoula Municipal Court's denial of his motion to suppress evidence based on a lack of probable cause for his arrest. The only issue on appeal is whether an off-duty officer arrested Iosefo without probable cause. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Mark Fiorentino, an off-duty police officer, arrested Iosefo shortly after 3:00 a.m. on August 26, 2012. Black Knight Security had employed Fiorentino to work as a security guard at the River City Roots festival, held in Missoula on August 25-26, 2012. Fiorentino had seen Iosefo enter the festival area through the exit of a parking garage and drive through yellow caution tape into the pedestrian area of the festival. When Iosefo attempted to turn around, he collided with a heavy plastic barricade and damaged the vehicle.

¶3 Fiorentino approached Iosefo's vehicle, but Iosefo continued his attempt to drive through the area. When Iosefo eventually stopped, Fiorentino instructed him to remain in his vehicle. Iosefo disobeyed Fiorentino's directive by exiting his vehicle and walking away. When Fiorentino attempted to contain him, Iosefo pulled away and began waving his arms and yelling.

¶4 Fiorentino called 911, and the police arrived within minutes. The dispatcher asked whether Fiorentino thought Iosefo was intoxicated, and Fiorentino replied, "Um, I can't tell. He backed-in the barricade here at the . . . ." Fiorentino did not finish his reply because he turned his attention back to Iosefo, who refused to stay in one place until the police arrived. Fiorentino recalled later that Iosefo had seemed "agitated" and "hyper." While they waited,

2

Fiorentino tried unsuccessfully to handcuff Iosefo and threatened to "put Iosefo on the ground." Fiorentino also threatened to put Iosefo at gunpoint. Apparently, the threat failed to stop Iosefo from moving around. City police officers arrived and immediately assumed custody of Iosefo. Iosefo was charged in Municipal Court with careless driving for striking the barricade, with aggravated DUI, and with unlawful breath test refusal under a City ordinance.

¶5 Iosefo filed a motion to suppress on November 16, 2012, arguing that Fiorentino lacked probable cause to effectuate a citizen's arrest. The Municipal Court denied the motion on January 23, 2013. Iosefo pleaded guilty to driving under the influence of alcohol, reserving the right to appeal the suppression order. The other charges were dropped. The Municipal Court sentenced Iosefo to one year in jail, with all but ten days suspended, and ordered him to pay a fine.

¶6 Iosefo appealed to District Court on February 15, 2013. The District Court affirmed the Municipal Court's denial of Iosefo's motion to supress.

**STANDARD OF REVIEW**

¶7 On appeal from a municipal court, the district court functions as an intermediate appellate court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. This Court reviews cases that originate in municipal court "as if the appeal originally had been filed in this Court," examining the record independently of the district court's decision and applying the appropriate standard of review. *Cantu*, ¶ 10; *City of Helena v. Broadwater*, 2014 MT 185, ¶ 8, __ Mont. __, __ P.3d __.

¶8     We review the denial of a motion to suppress to determine whether the trial court's findings of fact are clearly erroneous and whether it correctly applied those findings as a matter of law. *City of Missoula v. Fergunson*, 2001 MT 69, ¶ 6, 305 Mont. 36, 22 P.3d 198. The interpretation and construction of a statute present a question of law, which we review de novo. *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874.

## DISCUSSION

¶9     A law enforcement officer outside of his jurisdiction "may make an arrest under circumstances which would authorize a private citizen to do so." *State v. Updegraff*, 2011 MT 321, ¶¶ 45-46, 363 Mont. 123, 267 P.3d 28. Montana's citizen's arrest statute provides:

> (1)  A private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest. The private person may use reasonable force to detain the arrested person.
>
> (2)  A private person making an arrest shall immediately notify the nearest available law enforcement agency or peace officer and give custody of the person arrested to the officer or agency.

Section 46-6-502, MCA. Thus, an off-duty officer may use reasonable force to arrest a person only "if there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest." *Updegraff*, ¶ 52.

¶10    Probable cause for an arrest exists "if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that another person is committing or has committed an offense." *State v. Williamson*, 1998 MT 199, ¶ 21, 290 Mont. 321, 965 P.2d 231. The probable cause

4

determination "must be based on an assessment of all relevant circumstances, evaluated in light of the knowledge of a trained law enforcement officer." *Williamson*, ¶ 21. Mere suspicion is not enough to establish probable cause to believe that another person is committing or has committed an offense. *Williamson*, ¶ 21.

¶11 The Municipal Court held that Fiorentino, the off-duty officer, had probable cause to arrest Iosefo under the circumstances, remarking that "[i]t is hard to imagine how Fiorentino could have improved in his compliance with the expectations of § 46-6-502." The District Court affirmed. Iosefo contends that the arrest was invalid for two reasons: Fiorentino lacked authority to arrest Iosefo for a non-jailable offense, and Fiorentino acted upon a particularized suspicion instead of probable cause.

¶12 We apply the plain language of the statute to determine whether the citizen's arrest was lawful; we cannot "insert what has been omitted." Section 1-2-101, MCA. The citizen's arrest statute does not limit the type of offense upon which a citizen or out-of-jurisdiction officer may act in effecting an arrest. The plain language of the citizen's arrest statute requires only probable cause of "an offense." Section 46-6-502, MCA.

¶13 Iosefo argues that our decision in *Bauer* constrains all citizens' arrests to jailable offenses. *State v. Bauer*, 2001 MT 248, 307 Mont. 105, 36 P.3d 892. We held in *Bauer* that "it is unreasonable for a police officer to effect an arrest and detention for a non-jailable offense when there are no circumstances to justify an immediate arrest." *Bauer*, ¶ 33. At issue in *Bauer* was the statute governing warrantless arrests by peace officers, which provides:

5

A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

Section 46-6-311(1), MCA. We determined that a peace officer's warrantless arrest was unlawful where no "special circumstances[,] such as a concern for the safety of the offender or the public," existed that could justify subjecting a person "to the indignity of an arrest . . . ." *Bauer*, ¶ 33. Both the statute governing warrantless arrests by a peace officer and the citizen's arrest statute demand probable cause of "an offense" and "existing circumstances [that] require immediate arrest," not that the offense is "jailable." Thus, Fiorentino needed probable cause of an offense, not necessarily a jailable one. *Bauer* interpreted the language "existing circumstances require immediate arrest" to mean that, in the case of a non-jailable offense, there must be circumstances such as a concern for the safety of the offender or the public to justify the arrest. *Bauer*, ¶ 33. Here, Iosefo's dangerous conduct necessitated an immediate arrest.

¶14 Iosefo is incorrect when he argues that Fiorentino acted upon a mere particularized suspicion. Iosefo claims that probable cause did not exist until after Fiorentino effected his arrest, relying on Fiorentino's statement to the dispatcher that he could not tell whether Iosefo was intoxicated. Iosefo seems to argue that probable cause could be found only if Fiorentino had made observations that he was driving under the influence, such as "beer cans strewn about the vehicle," "slurred speech," "bloodshot eyes," "an odor of alcohol," or "any other indicia of impairment." Iosefo emphasizes that his behavior prior to the arrest was, at most, merely suspicious. To support this argument, Iosefo relies on the District Court's use

6

of particularized suspicion language when it found that Fiorentino "observed behavior that caused him to suspect" that Iosefo was somehow impaired. Iosefo further suggests that the arrest was made for the sole reason that Fiorentino could investigate this suspicious behavior to determine whether a DUI was being committed.

¶15 This argument fails because Fiorentino's observations were not limited to behavior that led him to suspect that Iosefo was impaired—he also witnessed Iosefo enter a parking garage going the wrong direction, drive through yellow caution tape, drive erratically into an area restricted for pedestrian use, and collide with a barricade in that area. This was not merely "suspect" or "suspicious" behavior; it was potentially dangerous behavior that would cause a reasonable person to believe that Iosefo was committing or had committed any of several offenses, including careless driving. The circumstances required an immediate arrest to protect pedestrians and property. Thus, authority to arrest existed regardless of whether Fiorentino believed that Iosefo was driving while intoxicated.

¶16 We recognize that Fiorentino could not arrest Iosefo only to investigate a suspicion of impaired driving. The citizen's arrest statute "contemplates a public safety purpose, not a criminal investigation purpose." *Updegraff*, ¶ 33. Iosefo's conduct, however, posed legitimate safety concerns to himself and the public that meet the citizen's arrest provision that the circumstances must require immediate arrest. In light of the imminent risks to pedestrians and property posed by Iosefo's continued presence behind the wheel, the Municipal Court properly determined that the circumstances required his immediate arrest here.

7

¶17 Finally, although Iosefo attempts to portray Fiorentino's methods of arrest as "vigilantism," the Municipal Court properly concluded that the force used to detain Iosefo was reasonable. Fiorentino did not draw his weapon and we are not confronted with a scenario where a citizen has elected to "[take] the law into his own hands." Although Fiorentino possessed only the authority provided by the citizen's arrest statute, we do not need to ignore that Fiorentino is a trained officer of the law. *See Updegraff*, ¶ 48 ("Obviously, peace officers do not suddenly forget all their training and experience simply because they cross an imaginary jurisdictional line in the sand."). In compliance with the statute, Fiorentino immediately notified proper authorities of the situation. On-duty Missoula police officers took control within minutes. Fiorentino's threats served briefly to detain Iosefo under circumstances where he was being unpredictable, unruly, and potentially endangering other citizens as well as himself. The force used by Fiorentino was reasonable in this situation—we need not speculate as to the potential of threats by another citizen under other circumstances.

## CONCLUSION

¶18 Fiorentino had probable cause to arrest Iosefo and the existing circumstances required his immediate arrest.

¶19 Affirmed.

/S/ BETH BAKER

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT

/S/ LAURIE McKINNON