No. 00-257

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 75

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JERRY MARK HERBENSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steven M. Hudspeth, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Marie Anders,

Assistant Attorney General, Helena, Montana

Marvin Anderson, Deputy Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: February 16, 2001

Decided: April 26, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Jerry Mark Herbenson appeals from the order denying his motion to suppress issued by the Eighth Judicial District Court, Cascade County. Herbenson contends that law enforcement did not have particularized suspicion to justify the traffic stop. We affirm.

BACKGROUND

¶2 On May 7, 1998, the State filed a motion for leave to file an information accompanied by a supporting affidavit. In his affidavit, the deputy county attorney made the following allegations:

¶3 On April 19, 1998, Kenneth Olson and Mike Taylor were driving east on Montana Highway 200 near Rogers Pass when they encountered a white and tan Chevy Blazer traveling at a high rate of speed. It was later determined that the appellant, Herbenson, was driving the Blazer. Herbenson was weaving from one lane to the other and at one point appeared to come close to rolling over. Olson and Taylor followed Herbenson from Highway 200 to Interstate 15 and then onto 10th Avenue South in Great Falls, Montana. Taylor contacted the Great Falls Police Department by cellular phone and reported his observations. He also continued to call the police dispatcher with updates on Herbenson's location.

¶4 Officer Richard Hollis and Sergeant David Smith of the Great Falls Police Department both responded. Sergeant Smith pulled behind Herbenson's vehicle at the intersection of 10th Avenue South and 13th Street. Officer Hollis observed Herbenson from his location at 10th Avenue South and 14th Street. Smith and Hollis observed Herbenson pull onto the right-hand emergency lane of 10th Avenue South, pass two vehicles, and turn right onto 13th Street. Sergeant Smith stopped Herbenson at the intersection of 13th Street and 11th Avenue South and Officer Hollis pulled in behind Smith.

¶5 Officer Hollis approached the driver's side of the vehicle and made contact with Herbenson. Hollis asked for Herbenson's driver's license. Herbenson reached into a cooler, which was located between the seats of his vehicle, for his wallet. As Herbenson retrieved his wallet, Hollis saw what appeared to be an 18-pack of beer in the cooler. Herbenson produced a driver's license with a pink probationary driving permit which allowed driving for essential purposes only. As Officer Hollis was talking to Herbenson, he noticed that Herbenson's eyes were bloodshot, his speech was slurred, and he occasionally stuttered. Hollis asked Herbenson to exit his vehicle and perform field sobriety tests. Herbenson was unable to complete the field sobriety tests, and Hollis asked Herbenson to take a preliminary breath test. Herbenson agreed to take the test. The results of the preliminary test exceeded 0.10 breath alcohol concentration. Officer Hollis placed Herbenson under arrest and transported him to the Cascade County Detention Center for processing. While at the detention center, Herbenson agreed to a breath test. The test indicated Herbenson's breath alcohol concentration to be 0.185. A review of Herbenson's driving record revealed that Herbenson had four prior convictions for driving under the influence of alcohol or drugs.

¶6 The State filed an Information on May 7, 1998, charging Herbenson with four offenses: (1) fourth or subsequent offense DUI, a felony; (2) violating the restrictions of his probationary driver's license, a misdemeanor; (3) overtaking a vehicle on the right without due regard for safety, a misdemeanor; and (4) operating a vehicle while a habitual traffic offender, a misdemeanor.

¶7 Herbenson filed several pretrial motions, including a motion to suppress evidence discovered following the stop of his vehicle. Herbenson claimed that evidence discovered pursuant to the stop should be suppressed because Officer Hollis did not have a particularized suspicion that Herbenson was engaging in criminal activity necessary to justify the stop. The District Court held a hearing on Herbenson's pretrial motions at which Mike Jones, a person hired by Herbenson to create a videotape of the crime scene, Officer Hollis, and Herbenson each testified. On August 10, 1999, the District Court issued an order denying Herbenson's motion to suppress.

¶8 Herbenson and the State subsequently entered into a plea agreement whereby Herbenson agreed to plead guilty to felony DUI and to overtaking a vehicle on the right without due regard for safety in exchange for the State's agreement to move to dismiss the other counts in the Information and to make sentencing recommendations. Herbenson also reserved his right to appeal the denial of his motion to suppress. The District Court

sentenced Herbenson to the Montana Department of Corrections for a period of 13 months with all but six months suspended, followed by three years probation, and fined Herbenson $10,000 with all but $1,000 suspended for the felony count of fourth or subsequent offense DUI. With regard to the misdemeanor offense of overtaking on the right without due regard for safety, the court fined Herbenson $500. Herbenson appeals.

## STANDARD OF REVIEW

¶9 The existence of particularized suspicion is a question of fact which the district court determines from the totality of the circumstances confronting the officer at the time of the stop. *State v. Halvorson*, 2000 MT 56, ¶ 9, 299 Mont. 1, ¶ 9, 997 P.2d 751, ¶ 9. On appeal from the denial of a motion to suppress, we review factual findings to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct. *Halvorson*, ¶ 9.

## DISCUSSION

¶10 Did the District Court err in determining that law enforcement had a particularized suspicion that Herbenson had committed or was committing an offense?

¶11 Montana peace officers are authorized to stop any vehicle observed "in circumstances that create a particularized suspicion" that an occupant of the vehicle has committed or is committing an offense. Section 46-5-401, MCA. To establish particularized suspicion, the State must show (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. *Halvorson*, ¶ 8 (citing *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296).

¶12 The District Court gave two separate factual bases in support of its finding that Officer Hollis and Sergeant Smith had a particularized suspicion that Herbenson had engaged or was engaging in criminal activity. The court's first explanation was that the arresting officers had a particularized suspicion that Herbenson was driving while intoxicated based on Taylor and Olson's citizen reports of Herbenson's driving patterns along with the police officers' corroboration of that information. The court's second explanation was that the arresting officers had a particularized suspicion that Herbenson was driving in an illegal manner because they actually witnessed Herbenson making an unsafe pass in violation of § 61-8-324(2), MCA. We will analyze each explanation

separately.

¶13 The court's finding that the officers had a particularized suspicion that Herbenson was driving while intoxicated is clearly erroneous because it was not based on record evidence. As Herbenson correctly observes, the State failed to introduce any evidence of the citizen reports at the hearing on Herbenson's motion to suppress. Without evidence of the citizen reports on the record, this finding must fail. Officer Hollis did not testify that he personally witnessed any objective facts prior to stopping Herbenson from which he could reasonably infer that Herbenson was driving while intoxicated.

¶14 The District Court's conclusion that the officers had a particularized suspicion that Herbenson had violated the traffic code by making an unsafe pass in violation of § 61-8-324(2), MCA, is not clearly erroneous. Section 61-8-324(2), MCA, provides in relevant part that "[t]he driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety." Officer Hollis testified that he stopped Herbenson because he witnessed Herbenson pass two vehicles stopped in the outermost lane of 10th Avenue South on the right without due regard for safety. Hollis believed Herbenson's maneuver was unsafe because either of the two cars which Herbenson had passed on the right could have been intending to make a right turn and could have collided with Herbenson. A law enforcement officer's personal observation of illegal activity is a sufficient justification for stopping a vehicle. *See State v. Farabee*, 2000 MT 265, ¶ 19, 57 St. Rep. 1106, ¶ 19. This finding is sufficient to justify Officer Hollis's stop. Thus, the court's erroneous reliance on non-record evidence in its first explanation is irrelevant.

¶15 Herbenson argues that the State failed to produce any evidence that his right turn onto 13th Street was illegal. Herbenson maintains that the evidence in the record established that his passing two cars on the right was not unsafe because there was plenty of room to pass, neither of the two vehicles had their turn signals on, he stopped at the intersection, and there were no pedestrians in the area. Herbenson notes that Officer Hollis testified that he did not see any indication that the two vehicles which Herbenson had passed on the right were planning on turning right.

¶16 Passing two vehicles that are stopped at an intersection and in the outermost lane of traffic by driving between those vehicles and the curb could certainly be characterized as unsafe. As Officer Hollis testified, the two vehicles which Herbenson passed on the right could have been intending to turn right onto 13th Street which could have resulted in a

collision with Herbenson's vehicle. The fact that neither of the two vehicles had indicated that they were planning on turning right does not make Herbenson's maneuver markedly more safe. We are well aware of the inconsistency with which drivers indicate their intended direction of travel. Thus, we affirm the court's denial of Herbenson's motion to suppress.

¶17 Alternatively, Herbenson maintains for the first time in his reply brief that his pass was lawful pursuant to § 61-8-324(1)(b), MCA, which provides that "[t]he driver of a vehicle may overtake and pass upon the right of another vehicle . . . upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two or more lines of moving vehicles in each direction." We decline to address Herbenson's new legal theory. Pursuant to Rule 23, M.R.App.P., "[a]n issue first raised in a reply brief is not properly raised for consideration on appeal." *State v. Hagen* (1997), 283 Mont. 156, 159, 939 P.2d 994, 996.

¶18 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER