No. 01-162, 01-269, 01-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 294

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

LONNY RAY KAUFMAN; DAVID MITCHELL
KAUFMAN; and OPAL INEZ COX,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and for the County of Mineral,
                    The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Kirk Krutilla, Superior, Montana; David Stenerson, Hamilton, Montana; Larry
                D. Mansch, Mansch & McLaverty, Missoula, Montana

        For Respondent:

                Mike McGrath, Montana Attorney General, C. Mark Fowler, Assistant
            Montana Attorney General, Helena, Montana; M. Shaun Donovan, Mineral
            County Attorney, Superior, Montana

                              Submitted on Briefs: October 25, 2001

                                  Decided: December 12, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     This consolidated appeal raises the question of whether a police officer possessed particularized suspicion to justify an investigative stop of a vehicle occupied by the three Appellants. We reverse the Fourth Judicial District Court and conclude that when the officer determined prior to the stop that the vehicle's lighting system was not malfunctioning, he lacked the requisite particularized suspicion to conduct an investigative stop. Since the issue of whether the investigative stop was supported by particularized suspicion is dispositive, we do not reach the other issues raised by the Appellants.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     By Order of this Court, this appeal consolidates the separate appeals of Lonny Ray Kaufman (No. 01-162), Opal Inez Cox (No. 01-269) and David Mitchell Kaufman (No. 01-345). Lonny and Opal were arrested on March 9, 2000, after a traffic stop conducted by Mineral County Deputy Sheriff Mike Toth on Interstate 90 near Superior, Montana. As a result of the stop, Officer Toth discovered Lonny and Opal in possession of approximately two ounces of methamphetamine. Lonny and Opal were charged by information with criminal possession of dangerous drugs with the intent to sell, in violation of § 45-9-103, MCA. Lonny told the police that he worked as a drug courier for his cousin David. David was subsequently arrested and charged with possession and conspiracy to distribute dangerous drugs, in violation of §§ 45-9-101 and 102, MCA.

¶3     The three Appellants filed motions to dismiss, each claiming that Officer Toth lacked particularized suspicion to conduct an investigative stop on the night of March 9, 2000. On August 10, 2000, the District Court held a consolidated hearing on the motions to suppress all evidence obtained as a result of the investigative stop. The court found that particularized suspicion justified

2

the stop and denied the motions. Appellants requested reconsideration on the grounds that Officer Toth testified at the hearing that the taillamps of the Appellants' vehicle functioned properly on the night of the stop, which meant that Toth observed nothing that indicated the Appellants had committed, were in the process of committing or were likely to commit any criminal act. The Appellants also argued that the stop was an illegal pretext to allow Toth to investigate a hunch that the Appellants were engaged in wrong-doing. The court denied the motion to reconsider on December 5, 2000.

¶4 Appellants each pleaded guilty, preserving their rights to appeal the denial of their motions to suppress evidence. Lonny received a 10-year suspended sentence and a $2500 fine; Opal and David each received 7-year suspended sentences and $2500 fines.

¶5 At the hearing on the motion to suppress, Officer Toth testified that he was on a routine patrol at about midnight along Interstate 90 on the snowy night of March 9, 2000, when he observed a vehicle at the Quartz rest area occupied by two persons that he estimated to be 20 to 30 years of age. As he drove by the vehicle, Toth stated he looked directly at the female occupant who sat in the driver's seat "and there was no eye contact made. She didn't look at me." A routine records check revealed the car was registered to Richard Evans, who was approximately 74 years old. Toth explained to the court that the age difference between the registered owner and the vehicle occupants "put up some flags but there wasn't--you know. There was nothing there I could do about it and the fact that she wouldn't look at me, didn't make contact with me."

¶6 Officer Toth then drove east to the Tarkio exit on Interstate 90 where he parked alongside the highway. When the same vehicle passed him, Toth noticed that one taillamp appeared brighter than the other, which made it "look[] like the brake light was on." He then followed the vehicle for three

3

to four miles. Toth testified that the vehicle moved at a slow rate of speed, swerved slightly over the fog line and the tires touched the painted center line. Although a video camera mounted in the patrol car driven by Toth recorded the suspect's driving behavior prior to the stop, and the video was viewed by the court, the tape is not part of the record on appeal.

¶7      At the suppression hearing, the Mineral County Attorney posed the following questions, which were answered by Officer Toth:

> Q. Okay. And what was the reason, the reason you felt you had legal justification to stop the car?
>
> A.  For the one brake light.
>
> Q.  Okay did it have anything to do with crossing the line?
>
> A.  No. That was just another thing I had in the back of my head when I'd go to the car.

Toth affirmed on cross-examination that he did not stop the Appellants' vehicle for driving at a slow rate of speed, swerving, lack of eye contact or the age difference between the car's owner and the occupants. He declared repeatedly that the sole reason for the stop was that the right taillamp of the Appellants' vehicle shone more brightly than the left lamp, which gave him the impression that the right brake light was stuck on.

¶8      When Officer Toth signaled the suspects to pull over, he observed that the turn signal and brake lights of the Appellants' vehicle operated properly. He testified that he then got out of his patrol car and walked up to the driver's window and explained:

> The reason I'm stopping you is I noticed your brake light appeared to be on but now that when you stopped it--that light still is brighter than your other light. It's not your brake lights. It's your running light is a lot brighter now than your other light, and you need to get that looked at, but its not a big deal.

At that point, Toth proceeded to ask for the driver's license and registration, to inquire about the

car's ownership and to question the Appellants about their reasons for traveling on the Interstate that night. No citation for a faulty taillamp or brake light was issued.

## STANDARD OF REVIEW

¶9 The standard of review of a district court's denial of a motion to suppress evidence is whether the court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Jarman*, 1998 MT 277, ¶ 8, 291 Mont. 391, ¶ 8, 967 P.2d 1099, ¶ 8 (citation omitted). To determine whether a finding is in error, this Court ascertains whether substantial evidence supports the finding, whether the district court misapprehended the effect of the evidence, and whether the Court is nevertheless left with a definite and firm conviction that the district court made a mistake. *Jarman*, ¶ 8 (citation omitted).

¶10 Appellants urge the Court to adopt a *de novo* standard of review for determinations of reasonable suspicion and cite *Ornelas v. U.S* (1996), 517 U.S. 690, 116 S. Ct. 1657, 134 L.Ed.2d 911, as authority. Appellants argue that questions encompassing issues of both law and fact warrant *de novo* review by this Court.

¶11 This Court has repeatedly stated that whether particularized or reasonable suspicion justifies an investigative stop is a question of fact that the district court determines from the totality of the circumstances confronting the officer at the time of the stop. *State v. Herbenson*, 2001 MT 75, ¶ 9, 305 Mont. 68, ¶ 9, 22 P.3d 1128, ¶ 9 (citing *State v. Halvorson*, 2000 MT 56, ¶ 9, 299 Mont. 1, ¶ 9, 997 P.2d 751, ¶ 9) . While largely a question of fact, the evaluation may encompass legal conclusions, such as whether or not a particular act or omission violates the law. *State v. Lafferty*, 1998 MT 247, ¶ 10, 291 Mont. 157, ¶ 10, 967 P.2d 363, ¶ 10. Also, the legal standard of objective reasonableness is applied to determine whether the inferences drawn from the objective facts give

5

rise to a particularized suspicion of wrong-doing.

¶12     We defer to the district courts on matters of fact-finding, and we will not disturb a finding of the trial court unless the determination is clearly erroneous. *Interstate Production Credit Ass'n. of Great Falls v. DeSaye* (1991), 250 Mont. 320, 324, 820 P.2d 1285, 1287-88; *State v. Cope* (1991), 250 Mont. 387, 396, 819 P.2d 1280, 1286. The trial court is in the best position to evaluate the credibility of witnesses with the benefit of live testimony, to become intimately familiar with the details of the case and to weigh the value of evidence. *State v. Kirkaldie* (1978), 179 Mont. 283, 289, 587 P.2d 1298, 1303; *State v. Weaselboy*, 1999 MT 274, ¶ 24, 296 Mont. 503, ¶ 24, 989 P.2d 836, ¶ 24 (citing *State v. Doyle*, 1998 MT 195, ¶ 18, 290 Mont. 287, ¶ 18, 963 P.2d 1255, ¶ 18). We will not disturb the district court's factual and credibility determinations on appeal. *Doyle*, ¶ 18 (citing *State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686). When legal conclusions arise in the mix of the totality of the circumstances and when the court applies the law to its findings, our review of those matters of law is plenary. *Lafferty*, ¶ 10 (citing *State v. Lee* (1997), 282 Mont. 391, 393, 938 P.2d 637, 639). We hold that our bifurcated standard of review affords appropriate deference to the trial court's fact-finding role and responsibility, while providing this Court with the opportunity to review legal conclusions and the application of legal standards *de novo*.

## DISCUSSION

¶13     ***Was the investigative stop supported by particularized suspicion?***

¶14     The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons against unreasonable searches and seizures. Whenever a police officer restrains a person's freedom, such as in a brief investigatory stop of a vehicle, the officer has seized that person. *State v. Reynolds* (1995), 272 Mont. 46, 49, 899 P.2d 540, 542

6

(citing *Terry v. Ohio* (1968), 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889; and *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621). A "stop" is defined by statute as "the temporary detention of a person that results when a peace officer orders the person to remain in the peace officer's presence." Section 45-2-101(72), MCA.

¶15    In *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296, we held that in order for the State to prove the existence of a particularized suspicion, the State must show:

> (1) objective data from which an experienced police officer can make certain inferences; and,
>
> (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in
>
> wrongdoing or was a witness to criminal activity.

When the facts support a particularized suspicion of wrong-doing, a limited and reasonable investigatory stop and search by the police are justified. *Gopher*, 193 Mont. at 194, 631 P.2d at 296. The statutory standard for an investigative stop reads:

> In order to obtain or verify an account of the person's presence or conduct or to
>
> determine whether to arrest the person, a peace officer may stop any person or
>
> vehicle that is observed in circumstances that create a particularized suspicion that
>
> the person or occupant of the vehicle has committed, is committing, or is about to
>
> commit an offense.

Section 46-5-401, MCA.

¶16    The District Court concluded that Officer Toth had reason to suspect that a rear taillamp of the Appellants' vehicle was malfunctioning, which provided legal cause to stop the car to investigate a possible violation of vehicular lighting requirements.

¶17    Section 61-9-204(1), MCA, states that a vehicle driving on public roads must be equipped

7

with at least two properly functioning taillamps mounted on the rear that emit a red light plainly visible from a distance of 1,000 feet. Section 61-9-206(2), MCA, provides that stop lamps on the rear of a vehicle must display a red light that is actuated upon application of the service (foot) brake and must be visible from a distance of not less than 300 feet in normal sunlight. The statutes also state that stop lamps may not project a glaring light. Section 61-9-206(3), MCA.

¶18    Officer Toth testified at the suppression hearing that one taillamp on the Appellants' vehicle emitted a significantly brighter light than the other. Initially, Toth believed the driver either might be applying the brakes and gas simultaneously or experiencing a lighting malfunction. However, after Toth signaled the driver to pull over, the officer noticed that turn signals of the Appellants' vehicle operated properly and both stop lamps were fully functional.

¶19    The District Court found Officer Toth to be a credible witness. According to Toth's testimony, a suspicion that the lighting system of the Appellants' vehicle was malfunctioning provided the sole basis for the investigative stop. The court determined that "[b]ecause of the unequal brightness of the tail-lights, Officer Toth believed, but was not certain, that there was a malfunction in the lighting system." In other words, based on his observation of the taillamps, Toth had an objectively reasonable basis for stopping the Appellants to investigate further, according to the court. A malfunction in the lighting system would justify stopping the vehicle for a violation of §§ 61-9-204 and 206, MCA. When Toth signaled the Appellants to pull over and discovered that the taillamps and stop lamps of the Appellants' car actually functioned properly, the court concluded that "Officer Toth made a mistake of fact, not a mistake of law." In drawing this distinction, the court stated that Toth "was mistaken as to the fact that despite the unequal brightness of the tail-lights, the brake-lights were operational" when he conducted the investigative stop.

8

¶20     The findings of the District Court appear to be based on substantial evidence and are not clearly erroneous.  However, based on these findings, we reach a different conclusion regarding whether particularized suspicion of criminal activity supported the investigative stop.  First, we note that a variance in the illuminating qualities of the two taillamps on a vehicle is not a violation of Montana law when each lamp emits a red light plainly visible from a distance of 1,000 feet to the rear.  *See* § 61-9-204(1), MCA.  Second, Toth testified that when the driver of the Appellants' vehicle applied the brakes to pull over on the highway, the stop lamps independently illuminated, which demonstrated to Toth that the driver had not been depressing the gas and brake pedals simultaneously as he had initially suspected.  Toth also realized as the Appellants slowed down that the vehicle's taillamps and stop lamps were fully functional.  Therefore, any suspicion Toth may have had that the lighting system was malfunctioning was quelled completely prior to the actual stop.

¶21     The State compares the facts of this case to *State v. Farabee*, 2000 MT 265, 302 Mont. 29, 22 P.3d 175, where police stopped Farabee while he was driving a vehicle that had only one headlight.  Additional officers arrived at the scene of the stop and told Farabee that minutes earlier they had observed him leaving a residence that was under surveillance for drug trafficking.  The detectives requested permission to search Farabee's vehicle.  Farabee consented and the detectives discovered bags of marijuana and drug paraphernalia.   The State argues that the investigation of criminal activity unrelated to the particularized suspicion that justified the stop does not invalidate a legal stop.

¶22      We agree and stated in *Farabee* that this Court has never held that an otherwise objectively justifiable traffic stop is unlawful because an officer used the stop to investigate a hunch about other

9

criminal acts. *Farabee*, ¶ 29. However, we also noted that each officer involved in the *Farabee* investigation testified that he personally witnessed Farabee driving a car that appeared to be missing a right headlight. From this objective and particularized data, the officers made the reasonable inference that Farabee was operating a vehicle without two working headlights in violation of § 61-9-203, MCA. Unlike the circumstances depicted in *Farabee* and according to the District Court's findings of fact, Officer Toth no longer suspected the Appellants of violating any traffic safety laws by the time the Appellants pulled over on the highway.

¶23 The State also argues that this Court has upheld investigative stops based on particularized suspicion of "possible" violations and points to *State v. Henderson*, 1998 MT 233, 291 Mont. 77, 966 P.2d 137, where a police officer legally stopped the driver of a vehicle that lacked license plates in order to check whether the temporary registration sticker obscured by a darkly tinted window was valid. We distinguish this case from *Henderson* because here Officer Toth witnessed that the lighting system of the Appellants' car functioned properly prior to the stop and there was no reason for him to follow through with any investigation.

¶24 The dissent maintains that a legal stop might have been executed pursuant to § 61-9-109(5), MCA, a provision that requires a vehicle's lamps "be maintained in proper working order and adjustment at all times." Although the State raised § 61-9-109(5), MCA, as a possible justification for the stop in its argument, the District Court did not cite this code section in its decision and Officer Toth testified that improper functioning of the brake lights was the focus of his concern that the Appellants might be driving a vehicle in an unsafe condition. Although Toth stated that the unequal brightness of the taillamps warranted attention, he told the Appellants that "it's not a big deal." Moreover, Toth testified that when the Appellants slowed down in response to the patrol

10

car's flashing lights he realized the Appellants' stop lamps were in working order and did not present a safety hazard.

¶25    Since Officer Toth harbored no suspicion of wrong-doing within the totality of the circumstances to justify further investigation by the time he had pulled the Appellants over on the highway, we conclude that there existed no legal reason for him to conduct the stop and question the Appellants about the ownership of the car or their reasons for being on the road that night. Therefore, we hold that all evidence gathered as a result of the stop must be suppressed.  Because we remand on the basis that the investigative stop was not supported by reasonable suspicion, we do not address the other issues raised by the Appellants.

¶26    Reversed and remanded.


/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

11

Justice Jim Rice dissenting.

¶27    I respectfully dissent.

¶28    The Court holds that the factual findings are based on substantial evidence and are not clearly erroneous, but that the District Court erred in concluding, as a matter of law, that the investigative stop was supported by particularized suspicion of criminal activity. The Court explains that a variance in the illuminating qualities of a vehicles' taillamps, when those lamps emit a red light plainly visible from a distance of 1,000 feet, is not a violation of § 61-9-204(1), MCA. Additionally, the Court observes that any suspicion Officer Toth may have had that the lighting system was malfunctioning was quelled completely prior to the actual stop, and therefore, a stop on the basis of the taillamps was not supported by suspected criminal activity. *See* ¶ 20.

¶29    I believe the facts found by the District Court establish, for purposes here, particularized suspicion that the Defendants' taillamps violated a different statutory provision. As argued by the State, § 61-9-109(5), MCA, requires taillamps to be maintained "in proper working order and adjustment at all times." Here, the taillamps were so far out of adjustment that, according to the District Court, they appeared to signal that the driver was applying the vehicle's brakes. Although Toth discovered otherwise when pulling the Defendants over, that discovery did not eliminate the maladjustment which caused the errant signaling. Although Toth elected not to issue a citation for maladjusted lighting under § 61-9-109(5), MCA, he could have done so. He did advise the Defendants that "[Y]ou need to get that looked at . . . ."

¶30    For these reasons, I would find the stop was supported by particularized suspicion and would affirm the District Court.

/S/ JIM RICE