

DA 11-0404

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 143

BNSF RAILWAY COMPANY,

       Petitioner and Appellee,

   v.

CHAD CRINGLE,

       Respondent and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 09-1016
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Peter M. Meloy, Meloy Law Firm, Helena, Montana
            Terry N. Trieweiler, Trieweiler Law Firm, Whitefish, Montana

      For Appellee:

            Jeff Hedger, Benjamin O. Rechtfertig; Hedger Friend, P.L.L.C.;
            Billings, Montana

Submitted on Briefs:    May 8, 2012
Decided:    July 5, 2012

Filed:

_____
                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Chad Cringle appeals the order of the First Judicial District Court, Lewis and Clark County, remanding this case to the Montana Human Rights Commission for further proceedings in his discrimination complaint against BNSF Railway Company (BNSF). The dispositive issue on appeal is whether BNSF has demonstrated sufficient grounds to excuse its noncompliance with the fourteen-day filing deadline of § 49-2-505(3)(c), MCA.

¶2     We reverse the District Court's order and remand with instructions to deny BNSF's petition for judicial review and to enter judgment in favor of Cringle.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     This case is before the Court for a second time regarding the fourteen-day time limit for appeal to the Human Rights Commission (Commission). *BNSF Ry. Co. v. Cringle*, 2010 MT 290, 359 Mont. 20, 247 P.3d 706. The background is summarized briefly before turning to the issue raised in the present appeal.

¶4     On July 7, 2008, Cringle filed a complaint with the Montana Department of Labor and Industry charging that BNSF had illegally discriminated against him in employment. The complaint was referred to a hearing officer for contested case proceedings. On May 1, 2009, the hearing officer granted summary judgment to Cringle on the issue of liability. The hearing officer determined that BNSF had "engaged in and is liable for a discriminatory refusal to hire Cringle." Following proceedings on the issues of damages and affirmative relief, the hearing officer issued a final decision in Cringle's favor on

2

September 2, 2009. That same day, the hearing officer issued notice of his decision by mail to counsel for Cringle and to counsel for BNSF.

¶5 The hearing officer's decision and the notice of that decision were received at the office of BNSF's counsel the next day, September 3. This was a "particularly busy day" at the law office, with staff working on a voluminous discovery project. The office was short-staffed and both documents were "set aside." Nineteen days elapsed. Then, on September 22, a legal secretary discovered the hearing officer's decision and the notice "under papers" on her desk. By that time, the decision had become final under § 49-2-505(3)(c), MCA, which states that if the hearing officer's decision is not appealed to the Commission within fourteen days after issuance of the notice, "the decision becomes final and is not appealable to district court."

¶6 BNSF filed a notice of appeal to the Commission under § 49-2-505(4), MCA. BNSF also filed a request to the Commission for an extension of time in which to file its notice of appeal. Citing Rule 24.9.113(3) of the Administrative Rules of Montana, BNSF argued that the time to file its appeal to the Commission could be enlarged for good cause. That rule provides: "Except as to dates fixed by statute and not subject to modification, the commission may enlarge the time to perform an act. In accordance with Rule 6(b) of the Montana Rules of Civil Procedure, the time may be enlarged for good cause shown." Cringle objected to BNSF's request for an extension of time and argued that the filing deadline is a "jurisdictional" bar that deprives the Commission of authority to entertain untimely appeals.

3

¶7 The Commission entered an order on October 5, 2009, denying BNSF's extension request and dismissing BNSF's appeal. Based on the plain language of § 49-2-505(3)(c), MCA, the Commission observed that the hearing officer's decision became "final" on September 16, six days before BNSF filed its notice of appeal.

¶8 BNSF sought judicial review in the District Court of the Commission's order dismissing its appeal. BNSF advised the District Court that the hearing officer's decision and notice were "either misfiled or otherwise misplaced by counsel's staff, and the time in which to file a notice of appeal was accordingly not placed on counsel's calendar." BNSF argued that the Commission had authority to extend the fourteen-day period for BNSF's appeal from the hearing officer's decision on the ground that filing periods are subject to "equitable modification." BNSF asked the District Court to reverse the Commission's decision denying BNSF's extension request and to remand the matter to the Commission with instructions either to accept BNSF's notice of appeal as timely or to consider in the first instance whether to grant BNSF's extension request.

¶9 The Commission and Cringle filed separate motions to dismiss BNSF's petition. The Commission argued that its decision was in accordance with § 49-2-505(3)(c), MCA, and that it did not have discretion to extend the statutory deadline. Cringle argued, among other things, that the District Court could not review the hearing officer's decision because the fourteen-day filing deadline of § 49-2-505(3)(c) and (4), MCA, is jurisdictional. Alternatively, Cringle argued that even if the filing deadline is a "categorical time prescription," rather than a jurisdictional limitation, the result is still the

4

same. He observed that there is no language in § 49-2-505(3)(c), MCA, allowing the deadline to be extended based on good cause.

¶10 The District Court concluded that § 49-2-505(3)(c), MCA, "limit[s] this Court's jurisdiction" over decisions of the Department of Labor and Industry by requiring that they be appealed to the Commission within fourteen days. Thus, because subject-matter jurisdiction cannot be forfeited or waived, the District Court decided that BNSF's petition must be dismissed. The court also denied BNSF's alternative request for "a writ of mandate, writ of review, or other appropriate writ" directing the Commission to entertain BNSF's appeal. The court observed that the Commission "does not have authority to lengthen statutory deadlines." Finally, the court granted Cringle's and the Commission's cross-petitions to enforce the hearing officer's decision.

¶11 BNSF appealed to this Court and argued that the District Court had jurisdiction to review the dismissal order under §§ 2-4-702 and 49-2-505(9), MCA, or alternatively under § 2-4-701, MCA. BNSF argued that the District Court had erred in interpreting the fourteen-day filing deadline as "jurisdictional," and asked this Court to hold that the Commission "has the authority to extend the deadline."

¶12 This Court articulated one issue on appeal: "Does the 14-day filing deadline in § 49-2-505(3)(c), MCA, deprive a district court of jurisdiction over matters arising between the parties after the deadline has expired?" *Cringle*, ¶¶ 3, 12. We answered this question in the negative, concluding that the fourteen-day filing deadline is a procedural time bar, not a limitation on a district court's jurisdiction. *Cringle*, ¶¶ 18, 20. Under § 2-

5

4-702, MCA, the District Court "possesses jurisdiction to hear the parties' dispute and adjudicate their issues." *Cringle*, ¶ 20. The Court remanded to the District Court to consider BNSF's "alleged good cause that would justify its motion for an extension of time." *Cringle*, ¶ 28. If BNSF made a sufficient showing, then BNSF could pursue its appeal of the hearing officer's decision to the Commission. *Cringle*, ¶ 28. Otherwise, the District Court was directed to deny BNSF's request for an extension. *Cringle*, ¶ 28.

¶13 The case now returns to this Court following the District Court's determination on remand that BNSF has shown good cause for its untimely filing. The District Court cited three considerations in its ruling. First, the court observed that the fourteen-day filing period is "a very short procedural limitation which implicates due process rights for both claimants and respondents because valid claims can be lost because documents can easily be misplaced for that period of time." Second, the court concluded that Cringle would suffer no prejudice if the fourteen-day time bar were waived because, "[i]f successful, Cringle will be awarded his attorney fees for being required to march through the administrative hoops, a likely appeal to this Court or federal court, and another appeal to the Montana Supreme Court or the Ninth Circuit Court of Appeals." Lastly, the court stated that "it does not appear BNSF has acted in bad faith in misplacing the documents for a short period of time and acted promptly once the documents were found."

¶14 Alternatively, the District Court noted that under an equitable tolling or excusable neglect standard, BNSF had presented evidence which the court viewed "as justifying relief from the very short 14-day administrative time bar." The court reasoned that the

interests of justice would be served by allowing BNSF's appeal to the Commission. The court entered an order on July 11, 2011, remanding this case to the Commission. Cringle timely appealed.

¶15 We now clarify that, because § 49-2-505(3)(c), MCA, is a statutory time prescription that provides an inflexible rule of finality, "good cause" for excusing noncompliance with the statute requires a showing of circumstances beyond the party's reasonable control that prevented the party from timely filing its notice of appeal. Applying this principle, we conclude that BNSF has failed to justify relief from the time bar.

**STANDARD OF REVIEW**

¶16 The parties dispute the applicable standard of review. Cringle argues that de novo review applies, while BNSF argues that the standard is whether the District Court abused its discretion. We conclude that de novo review applies to determine whether the facts found by the District Court warrant a conclusion that BNSF presented circumstances sufficient to grant it an equitable exception from the statutory filing deadline. We apply de novo review to mixed questions of law and fact, including the district court's application of controlling legal principles to its factual findings. *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, 179 P.3d 534. In such cases, the district court's factual findings will not be disturbed unless they are clearly erroneous. *State v. Hass*, 2011 MT 296, ¶ 13, 363 Mont. 8, 265 P.3d 1221. Thus, although we review the District Court's factual determinations for clear error, whether those facts satisfy the legal standard is

7

reviewed de novo. *Citizens Right to Recall v. State*, 2006 MT 192, ¶ 6, 333 Mont. 153, 142 P.3d 764; *Davis v. State*, 2008 MT 226, ¶ 10, 344 Mont. 300, 187 P.3d 654 ("We review de novo a trial court's decision to deny a motion for equitable tolling where the underlying facts are undisputed."). We have recognized in other contexts that such a "bifurcated standard of review affords appropriate deference to the trial court's fact-finding role and responsibility, while providing this Court with the opportunity to review legal conclusions and the application of legal standards de novo." *State v. Kaufman*, 2002 MT 294, ¶ 12, 313 Mont. 1, 59 P.3d 1166.

## DISCUSSION

¶17 On appeal, as they did before the District Court, the parties dispute what standard BNSF had to satisfy to proceed with its appeal despite noncompliance with the appeal deadline. This Court did not elaborate on that question in *Cringle*. In our decision, we simply held that the deadline in § 49-2-505(3)(c), MCA, is a nonjurisdictional time bar that is subject to "constitutional review and equitable principles." *Cringle*, ¶ 18. The Court cited the doctrine of equitable tolling as an example of equitable principles. *Cringle*, ¶ 18. In its remand instructions, the Court directed the District Court to "hear BNSF's alleged good cause that would justify" an out-of-time appeal. *Cringle*, ¶ 28.

¶18 Cringle argues that the standard for extending a deadline which is categorical and contains no express exceptions—like § 49-2-505(3)(c), MCA—should be *greater* than the standard for extending a deadline which expressly is made subject to exceptions such

8

as "good cause" or "excusable neglect." He argues that the Court should interpret the "good cause" language of *Cringle* consistently with the standard for equitable tolling.

¶19 BNSF asserts that "traditional equitable tolling" is not the standard. Rather, focusing on the references in *Cringle*'s remand instruction to good cause, BNSF argues the Court unequivocally adopted a good cause standard, which is "considerably more lenient" than equitable tolling. BNSF argues that this Court should uphold the District Court's ruling on the basis of the four-factor test we articulated in *N.W. Truck & Trailer Sales v. Dvorak*, 265 Mont. 327, 334, 877 P.2d 31, 35 (1994), for consideration in assessing "excusable neglect or good cause" under Mont. R. App. P. 5(c) (1993).

¶20 We disagree that *Cringle*'s reference to "equitable principles" and "good cause" created a liberal standard for excusing noncompliance with the categorical statutory time bar contained in § 49-2-505(3)(c), MCA. We reject BNSF's analogy to *Dvorak*, which interpreted a rule of court that expressly allowed a good cause or excusable neglect exception. We leave for another day, however, Cringle's argument that we should apply principles of equitable tolling to a party's failure to meet a categorical deadline imposed by statute.

¶21 Both in *Cringle*, where we remanded for a determination of "good cause," and in *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, 359 Mont. 77, 246 P.3d 704, where we did apply equitable tolling, we emphasized "'the importance of applying procedural bars regularly and consistently.'" *Weidow*, ¶ 28; *Cringle*, ¶ 18 (citing cases). Firm deadlines for launching an appeal "advance the interests of the parties and the legal

system in fair notice and finality." *Greenlaw v. U.S.*, 554 U.S. 237, 252, 128 S. Ct. 2559, 2569 (2008). While we have recognized that equitable principles will in some cases excuse strict compliance with a categorical time bar, "good cause" for such relief necessarily requires a "legally sufficient reason." *City of Helena v. Roan*, 2010 MT 29, ¶ 13, 355 Mont. 172, 226 P.3d 601. Because categorical claim-processing rules are generally rigid, inflexible, and unalterable, *Miller v. Eighteenth Jud. Dist. Ct.*, 2007 MT 149, ¶ 44, 337 Mont. 488, 162 P.3d 121, it necessarily follows that a "legally sufficient reason" for excusing noncompliance with a categorical time prescription requires a greater and more demanding showing than a "legally sufficient reason" for excusing noncompliance with a statute or rule providing a good cause exception. While we have rejected a "one-size-fits-all approach" in the application of equitable principles, *Weidow*, ¶ 28, a legally sufficient reason requires, at a minimum, reasonable effort to pursue one's legal rights. *Puhto v. Smith Funeral Chapels, Inc.*, 2011 MT 279, ¶ 14, 362 Mont. 447, 264 P.3d 1142 (denying relief for a layperson's "inattention to mail"). As we noted in *Puhto*, "[l]itigants have a duty to monitor litigation." *Puhto*, ¶ 10 (citing *Caplis v. Caplis*, 2004 MT 145, ¶ 24, 321 Mont. 450, 91 P.3d 1282). *See also Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990) (characterizing an attorney's failure to timely discover EEOC notice as a lack of "diligence in preserving his legal rights.").

¶22 In this regard, we reject BNSF's characterization of the fourteen-day filing deadline as merely "an internal agency claim-processing rule." As the Commission pointed out in the District Court, the Montana Human Rights Act's short deadlines are

10

designed to bring about prompt resolution of discrimination claims. *See generally* Title 49, chapter 2, part 5, MCA. Section 49-2-505(3)(c), MCA, mandates that a hearing officer's decision is "final" unless it is appealed to the Commission within fourteen days after issuance of the notice of decision. This period—"short" though it may be—reflects the legislature's general intent to expedite discrimination claims. It is therefore appropriate to excuse noncompliance with the Human Rights Act's appeal deadline only where the parties have acted with reasonable diligence to preserve their legal rights but have been prevented from doing so by circumstances reasonably beyond their control.

¶23 We therefore conclude, as we did in *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 42, 323 Mont. 453, 100 P.3d 987, that it is unnecessary to determine in this case whether the equitable tolling doctrine recognized in federal discrimination cases (*e.g., Irwin*, 498 U.S. at 96, 111 S. Ct. at 458) should apply to the deadlines imposed by the Montana Human Rights Act. Even under a "good cause" standard, as discussed above, BNSF is not entitled to relief. In this case, BNSF had participated in contested case proceedings with a full opportunity to present evidence and legal argument. It was represented by experienced legal counsel, familiar with the Human Rights Act's processes, who reasonably knew or should have known the importance of responding quickly to the hearing officer's decisions but simply "made a mistake." There is no evidence that BNSF was prevented by any factor outside its control from timely filing its appeal. Although BNSF disputes whether Cringle would suffer prejudice if the appeal were allowed to proceed, we conclude that consideration of potential prejudice to Cringle is

11

not controlling under the circumstances presented in this case. Misplacement of the hearing officer's decision in counsel's office fails to establish reasonable steps to preserve BNSF's legal rights. Counsel's failure to discover the notice did not constitute sufficient cause for relief from its untimely notice of appeal.

¶24 The July 11, 2011 order of the District Court is reversed. On remand, the court is directed to deny BNSF's petition for judicial review and to enter judgment in favor of Cringle.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


Justice Brian Morris, specially concurring.

¶25 I join in the Court's decision because the facts do not warrant our exercise of equitable powers. I write separately to reiterate that we rejected in *Weidow* "any one-size-fits-all approach" when addressing a limitations period. *Weidow*, ¶ 28. Equity allows courts to evaluate the circumstances and reasons for why a party failed to comply with a limitations period. *Weidow*, ¶ 28. This equitable power proves particularly critical when a limitations period would deprive a party of his rights and where, simultaneously,

enforcing the limitations period would serve no policy purpose. *Weidow*, ¶ 28. Equity ensures just results in exceptional circumstances. *Cringle*, ¶ 18.

/S/ BRIAN MORRIS

Justice Michael E Wheat joins in the special concurring Opinion of Justice Morris.

/S/ MICHAEL E WHEAT

Justice James C. Nelson, concurring.

¶26 I join the Court's Opinion, which I believe correctly resolves this case based on the law of the case established in *Cringle* and on the factual circumstances presented by BNSF on remand. I write separately to clarify my views concerning the application of common-law equitable exceptions to categorical time prescriptions.

¶27 In resisting BNSF's motion for an extension of time in which to file an appeal to the Human Rights Commission, Cringle invoked the notion that the 14-day filing deadline is "jurisdictional." We made clear in *Cringle* that this deadline—and procedural time bars generally—are not jurisdictional (in the sense that they do not deprive a court of subject-matter jurisdiction). *Cringle*, ¶¶ 16-20. In so doing, we observed that "[p]rocedural time bars, like the 14-day filing deadline in § 49-2-505(3)(c), MCA, remain subject to constitutional review and equitable principles." *Cringle*, ¶ 18. There is no question that procedural time bars are subject to constitutional challenge and review. On

13

this point, we were unanimous. *See Cringle*, ¶ 18 (opinion of the Court); *Cringle*, ¶ 39 (Rice, J., dissenting). Upon further research and reflection, however, I have reconsidered our suggestion that *all* procedural time bars are subject to judicially crafted equitable exceptions. *Cringle*, ¶ 18. I have now concluded that this proposition is incorrect. Rather, each categorical time prescription must be analyzed individually, within its statutory context and framework, so as to effect legislative intent. (The same principle would apply to categorical time bars contained within rules of court.)

¶28 The Supreme Court's equitable tolling jurisprudence provides some useful insights in this regard. In *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S. Ct. 453 (1990), the Supreme Court observed that time requirements in lawsuits between private litigants, including the statutory time limits applicable to lawsuits against private employers under Title VII of the Civil Rights Act of 1964, "are customarily subject to 'equitable tolling.' " 498 U.S. at 95, 111 S. Ct. at 457. The Supreme Court noted, however, that this "presumption of equitable tolling" is "rebuttable." *Irwin*, 498 U.S. at 95-96, 111 S. Ct. at 457. In order to honor legislative intent, the *Irwin* presumption is rebutted where "there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350, 117 S. Ct. 849, 851 (1997) (emphasis in original). Thus, the Supreme Court has stated that "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute." *United States v. Beggerly*, 524 U.S. 38, 48, 118 S. Ct. 1862, 1868 (1998); *accord Young v. United States*, 535 U.S. 43, 49, 122 S. Ct. 1036, 1040 (2002) ("It is hornbook law that limitations

14

periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." (citations and internal quotation marks omitted)).

¶29    The tax statute under consideration in *Brockamp*, for example, set forth its time limitations "in unusually emphatic form." 519 U.S. at 350, 117 S. Ct. at 851. Moreover, it set forth "explicit exceptions to its basic time limits, and those very specific exceptions d[id] not include 'equitable tolling.' " *Brockamp*, 519 U.S. at 351, 117 S. Ct. at 852. The Supreme Court concluded, therefore, that Congress did not intend courts to read "unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S. at 352, 117 S. Ct. at 852. Conversely, the Supreme Court concluded in *Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549 (2010), that the timeliness provision in the federal habeas corpus statute *is* subject to equitable tolling. Among other things, the Supreme Court observed that the statute did not contain "unusually emphatic" language and that equitable tolling would not undermine the statute's basic purposes. *Holland*, 130 S. Ct. at 2561-62 (internal quotation marks omitted).

¶30    Following this logic, the application of common-law equitable doctrines to categorical statutory time bars is a two-step process: first, determine whether the Legislature intended to preclude the application of equitable exceptions to the time bar at issue; second, if the Legislature *did* intend to preclude equitable exceptions, then the time bar must be enforced (absent a successful constitutional challenge), but if the Legislature *did not* intend to preclude equitable exceptions, then determine whether the claimed equitable exception applies on the facts presented. Whether the Legislature intended the

15

courts to read "unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote," *Brockamp*, 519 U.S. at 352, 117 S. Ct. at 852, is a preliminary question because equitable exceptions are not permissible where they are "inconsistent with the text of the relevant statute," *Beggerly*, 524 U.S. at 48, 118 S. Ct. at 1868.

¶31    In *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, 350 Mont. 320, 207 P.3d 316, the governing time provision stated: "Except as provided in 27-2-216 and 27-2-217, the period prescribed for the commencement of an action upon a liability not founded upon an instrument in writing is within 3 years." Section 27-2-204(1), MCA; *see also Lozeau*, ¶ 13. This is not the sort of "unusually emphatic" statutory language that would preclude the application of equitable exceptions. Indeed, we applied our equitable tolling doctrine to Lozeau's late-filed claim. *Lozeau*, ¶¶ 14-21. In the present case, in contrast, the timing provision states that an appeal may be filed with the Commission within 14 days after notice of the hearing officer's decision is issued, but if the appeal is not filed within 14 days, "the decision becomes final *and is not appealable to district court.*" Section 49-2-505(3)(c), (4), MCA (emphasis added). It is one thing for the Legislature to provide a mechanism for obtaining review and to include a filing deadline. In that situation, equitable doctrines may be available to excuse noncompliance with the deadline. But it is quite another when the Legislature goes further and dictates that a decision "is not appealable" if it is not appealed within the specified timeframe. In that situation, it is not the prerogative of the courts to ignore the Legislature's clear and unequivocal pronouncement and to graft equitable exceptions onto the statute. In my

16

view, the language "is not appealable" is a clear directive not to apply equitable exceptions to the filing deadline. It is " 'an inflexible rule requiring dismissal whenever' its 'clock has run.' " *Holland*, 130 S. Ct. at 2560 (quoting *Day v. McDonough*, 547 U.S. 198, 208, 126 S. Ct. 1675, 1683 (2006)); *see also Cringle*, ¶ 35 (Rice, J., dissenting).

¶32 I stand by our holding in *Cringle* with regard to the District Court's erroneous "jurisdiction" rationale.[1] But, for the reasons discussed above, I now conclude that we should not have crafted an equitable exception to the filing deadline of § 49-2-505(3)(c), MCA. For purposes of *future* cases, if the 14-day deadline is timely raised—by the party who would benefit from it, by the Commission, or by the district court, *see Cringle*, ¶¶ 18, 25—I believe it must be enforced, subject to constitutional challenge and review. For purposes of *this* case, however, the law established in *Cringle* requires that we apply a "good cause" analysis to BNSF's motion. *Cringle*, ¶ 28. I believe the Court does so correctly, and I accordingly join the Court's Opinion.

¶33 I concur.

/S/ JAMES C. NELSON

Justices Patricia O. Cotter and Jim Rice join the Concurrence of Justice James C. Nelson.

/S/ PATRICIA COTTER
/S/ JIM RICE

---

[1] Additionally, I continue to believe that *Weidow* was correctly decided on the facts specific to that case. I would not, however, enlarge that decision beyond its facts.

17