FILED

02/20/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0645

DA 21-0645

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 31

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JUNE LEE WOLVERINE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-21-288
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Charles W. Schuyler, Schuyler Law Office, PC, Missoula, Montana

       For Appellee:

       Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

       Joshua Racki, Cascade County Attorney, Preston Rammell, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  December 20, 2023

Decided:  February 20, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     June Wolverine appeals a November 8, 2021 ruling from the Eighth Judicial District Court, Cascade County, affirming the Justice Court's denial of Wolverine's motion to dismiss for lack of a speedy trial.

¶2     We restate the sole issue on appeal as follows:

*Did the District Court err in ruling the Justice Court had good cause to delay Wolverine's misdemeanor trial beyond the statutory six-month deadline?*

¶3     We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 11, 2020, Wolverine was charged with six misdemeanor traffic violations, including Driving Under the Influence of Alcohol (DUI), Third Offense. The Justice Court conducted Wolverine's initial hearing the next day. Wolverine pled not guilty. An omnibus hearing was set for June 18, 2020, and trial was set for August 6, 2020.

¶5     At the June 18 omnibus hearing, the prosecutor and defense stipulated that Wolverine was incarcerated. The State made no other filings indicating Wolverine was unable to appear for trial. At the time, the record did not indicate what jurisdiction had incarcerated her or when she would be released.

¶6     Ultimately, Wolverine did not appear for her August 6 trial. On September 22, the State moved to continue Wolverine's trial, stating "This motion is made on grounds and for the reasons that Defendant was in federal custody. . . ." The motion did not provide a notice regarding the imminent speedy trial deadline, and it did not state when Wolverine

2

would be released. The State brief notes that "[t]he record does not reveal when or how the State obtained" information that she was in federal custody.

¶7 On September 24, 2020, the Justice Court granted the State's continuance request and set trial for January 12, 2021.

¶8 On January 11, 2021, Wolverine filed a motion to dismiss for lack of speedy trial, asserting the six-month deadline had expired, citing § 46-13-401(2), MCA. Wolverine argued the State failed to satisfy the good cause standard for the trial delay, averring that "The State has passively acquiesced to the . . . trial on a date beyond the 6 months allowed [by statute]." The Justice Court denied Wolverine's motion on January 21, and reset the trial date to April 16, 2021.

¶9 On April 16, 2021, Wolverine personally appeared and pled guilty to misdemeanor DUI, third Offense, and expressly reserved her right to appeal the speedy trial issue.

¶10 On November 8, 2021, based on a review of the record, the District Court affirmed the Justice Court's denial of the motion to dismiss, noting that "Defense counsel did not deny or dispute that her client had been in federal custody on August 6. Neither did counsel undertake to explain precisely what the State would have done to extract Ms. Wolverine from federal custody and get her to the state courthouse for trial." Crediting the Justice Court's experience in matters involving defendants in federal custody, the District Court ruled "The State has accordingly carried its burden of showing that Ms. Wolverine's federal incarceration 'had a clear causal impact' . . . on not trying her as originally scheduled on August 6 or any of the remaining 66 work days before the six-month clock ran out."

3

**STANDARDS OF REVIEW**

¶11    We review district court appellate decisions under the same standards of review that would have been applied if the case had originally been appealed to this Court. *City of Helena v. Grove*, 2017 MT 111, ¶ 4, 387 Mont. 378, 394 P.3d 189 (citations omitted).

¶12    Our review in statutory speedy trial cases incorporates both clear error and de novo standards, preserving our plenary review of mixed questions of law and fact. *State v. Kuntz*, 2024 MT 2, ¶ 10, 415 Mont. 1, 541 P.3d 766 (citation omitted).

¶13    A trial court is better positioned to understand the background and evidence in a case, thus its factual findings will not be disturbed unless the court committed clear error. *State v. Kaufman*, 2002 MT 294, ¶ 12, 313 Mont. 1, 59 P.3d 1166 (citation omitted). "A factual finding is clearly erroneous if it is not supported by substantial evidence, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves this court with the definite and firm conviction that a mistake has been made." *City of Helena v. Roan*, 2010 MT 29, ¶ 7, 355 Mont. 172, 226 P.3d 601 (citation omitted).

¶14    Whether a criminal defendant's statutory right to a speedy trial was violated under § 46-13-401(2), MCA, is a question of law that we review de novo. *State v. Luke*, 2014 MT 22, ¶ 10, 373 Mont. 398, 321 P.3d 70 (citation omitted). Applications of legal standards to a trial court's factual findings are mixed questions of law and fact, which are reviewed de novo. *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, 179 P.3d 534 (citation omitted).

**DISCUSSION**

¶15 *Did the District Court err in ruling the Justice Court had good cause to delay Wolverine's misdemeanor trial beyond the statutory six-month deadline?*

¶16 Wolverine argues the District Court erred because the State took no action to secure Wolverine's temporary release from federal custody to attend the Justice Court proceeding within the six-month window. The State counters that Wolverine's federal incarceration satisfies the standard for good cause under the misdemeanor speedy trial statute, § 46-13-401(2), MCA, because it could not have secured Wolverine's temporary release for a Justice Court trial while she was in federal custody.

¶17 Charges will be dismissed for misdemeanor speedy trial violations when the defendant does not ask for a postponement and the State fails to show good cause for the delay. *Roan*, ¶ 9. "Good cause" is a "legally sufficient reason for the delay given the totality of the facts and circumstances of a particular case." *Roan*, ¶ 13.

¶18 Because Wolverine did not ask for a postponement, we must therefore determine whether the Justice Court committed clear error or applied the law incorrectly when it determined there was good cause for Wolverine's trial delay. *Kuntz*, ¶ 14 (citing *Luke*, ¶ 10).

¶19 In *State v. Ronningen*, we reversed a district court ruling dismissing a statutory speedy trial claim when the "State acquiesced in the trial setting . . . two weeks past the statutory deadline." 213 Mont. 358, 362, 691 P.2d 1348, 1351 (1984). There, the district court judge retired before trial, and the State failed to move for another judge to preside or request a new trial date be set within the six-month deadline. 213 Mont. at 360, 691 P.2d

5

at 1349-50. We determined the State did not show good cause because it knew about the deadline well before it was set to expire, yet it still failed to ask for or recommend an alternate course of action. 213 Mont. at 361, 691 P.2d at 1350. Here, the State knew that Wolverine was incarcerated as early as June 18, 2020, and concedes it is unaware of when it learned she was in *federal* custody. Then, the State filed its September 22, 2020 motion to continue. The State thus had at least a month-and-a-half (and possibly over four months) to ask the U.S. Marshals for Wolverine's temporary release in order to get her to trial. Even assuming that was impossible, the State could have simply notified the Justice Court about the looming deadline. Instead, the State filed its motion to continue a month-and-a-half late without providing that notice. Like *Ronningen*, the State did nothing as the deadline passed by.

¶20 The State argues that *Luke* and *Roan* should guide our analysis because her federal incarceration was her own doing, and the State was otherwise diligent in prosecuting Wolverine's case. Both cases are readily distinguishable.

¶21 In *Luke*, we affirmed because the defendant failed to appear for a pretrial conference even though he had received a warning that his trial would be rescheduled if he did so. *Luke*, ¶ 4. When he failed to appear, his trial was rescheduled beyond the deadline, and his speedy trial claim was denied. *Luke*, ¶ 20. We were persuaded to affirm because the justice court held bench trials just one day per week, and its crowded docket afforded it the flexibility to reschedule trials when defendants failed to comply with court-ordered deadlines. *Luke*, ¶ 20. Unlike *Luke*, the facts here do not indicate Wolverine was even

aware there were court-ordered deadlines in her case, nor that the Justice Court's crowded docket was the cause for delay.

¶22 *Roan*, on the other hand, involved a trial that was set beyond the deadline because a witness could not appear due to difficulties with her pregnancy. *Roan*, ¶ 14. We affirmed because the State demonstrated the witness was necessary to present its case, and the witness was unavailable for legitimate medical reasons. *Roan*, ¶ 14. The speedy trial violation here had nothing to do with an unavailable witness. Had the State "diligently prosecuted" its case, as it contends, it would have determined where Wolverine was detained after it stipulated to her incarceration on June 18, 2020 (assuming it did not already know). Such an inquiry would have enabled the State to file a timely continuance request and address the likelihood that Wolverine would not make it to trial prior to the November 12, 2020 deadline.

¶23 We agree that the State had no strict legal obligation to seek Wolverine's temporary release. Further, we acknowledge it may not have been possible for the State to do so had it tried.[1] The Justice Court took judicial notice of difficulties it has experienced with similar situations in the past. We decline to accept, however, that the State may simply wait for a speedy trial violation to occur because it assumes nothing can be done to prevent it. "The prosecution and the court have an affirmative constitutional obligation to try the defendant in a timely manner, and this duty requires a good-faith, diligent effort to bring him to trial quickly." *State v. Hodge*, 2014 MT 308, ¶ 20, 377 Mont. 123, 339 P.3d 8 (citing *State v.*

---

[1] The record does not reflect whether Wolverine was being held in the Cascade County jail or whether it would have been possible to have her appear by remote two-way communication.

7

*Ariegwe*, 2007 MT 204, ¶ 65, 338 Mont. 442, 167 P.3d 815). To show good cause for a speedy trial violation, the State thus has the burden of showing it was diligent. When the State is aware a defendant is incarcerated, that burden includes gathering information necessary to determine whether the incarceration will prevent a timely trial. Then, the State must, at minimum, notify the trial court about a looming speedy trial deadline. The State failed to do so here.

¶24 Finally, we disagree with the Justice Court's conclusion that Wolverine forfeited her right to a speedy trial. The Justice Court's trial *in absentia* analysis was generally correct—there was no legal basis to hold Wolverine's trial without her present, which it thus correctly declined to do. Wolverine was not, however, the "equivalent of a fugitive." There is nothing in the record to indicate Wolverine would have failed to appear had she known about the trial and otherwise been able to appear, thus there is no legal basis for that conclusion. Wolverine did not forfeit her speedy trial right.

¶25 Based on the "totality of the facts and circumstances" in this case, we hold that the State failed to demonstrate good cause for Wolverine's trial delay.

## CONCLUSION

¶26 The District Court erred in ruling that the Justice Court was correct to deny Wolverine's motion to dismiss for lack of a speedy trial.

¶27 Reversed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER